ATTORNEY FOR APPELLANT
Gregory Bowes
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Ralph W. Staples, Jr.
M. Brady Beyers
Indianapolis, Indiana

Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

_____

## In the
## Indiana Supreme Court

**FILED**

Jun 17 2009, 1:30 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

_____

### No. 49S02-0812-CV-641

SUSANA HENRI,        *Appellant (Plaintiff and Counter-Defendant below),*

v.

STEPHEN CURTO,        *Appellee (Defendant and Counter-Claimant below).*

_____

Appeal from the Marion Superior Court, No. 49D02-0412-CT-2275
The Honorable Kenneth H. Johnson, Judge

_____

On Transfer from the Indiana Court of Appeals, No. 49A02-0709-CV-777

_____

**June 17, 2009**

**Dickson, Justice.**

Presenting contentions of improper conduct of jury deliberations and insufficient evidence, the plaintiff challenges a jury verdict adverse to her civil damage claim for rape and in favor of the defendant's counterclaim for tortious interference with his university contract as a result of his expulsion. Having granted transfer, we affirm the trial court.

Susana Henri and Stephen Curto were students at Butler University in Indianapolis in March 2004, when they met for the first time at an off-campus party. They drank alcohol, left

the party together, went to a dorm room, and engaged in sexual intercourse. Alleging lack of consent, Ms. Henri subsequently sued Mr. Curto, seeking civil damages for rape. Denying the rape allegation, Mr. Curto, who had been temporarily suspended from the university in the aftermath of the incident, counterclaimed for tortious interference with his contract with the university. The parties presented their evidence to a five-women, one-man jury, which found against Ms. Henri on her claim and in favor of Mr. Curto on his counterclaim, awarding him damages of $45,000. Ms. Henri appealed, and a divided panel of the Court of Appeals, issuing three separate opinions, reversed and remanded for a new trial because of errors during the jury's deliberations. Henri v. Curto, 891 N.E.2d 135 (Ind. Ct. App. 2008). We granted transfer.

Ms. Henri's appellate claims relate to the following: (1) whether the jury received improper external communications; (2) whether the trial court failed properly to assist the jury at an impasse; and (3) whether sufficient evidence supports Mr. Curto's counterclaim. Mr. Curto's response seeks appellate attorney fees.

## 1. External Jury Communications

Ms. Henri contends that the trial court erred in denying her motion to correct error, which sought a new trial on grounds that (1) the bailiff answered a jury question without first consulting the judge, thus denying counsel the opportunity to participate in deciding how to answer the question; (2) the jury was given an improper answer to its question regarding the need for unanimity; (3) one juror accepted a cell phone call during deliberations; and (4) the alternate juror improperly communicated with the regular jurors during trial and deliberations.

In support of her contentions, Ms. Henri focuses on Indiana Code § 34-36-1-4(d), which states:

> The officer in charge of the jury shall not permit any communication to be made to the jury. The officer in charge of the jury shall not communicate with the jury, except:
>     (1) to ask the jury if it has agreed upon a verdict; or
>     (2) by order of the court.

The jury in this case consisted of six persons. After the jury verdict was announced,

counsel for Ms. Henri polled the jury, and, when separately asked whether he or she agreed with the verdict, each answered, "Yes." Tr. at 654-55. Several days after the trial concluded, one of the jurors (not the jury foreperson) contacted Ms. Henri's attorney and then executed the affidavit upon which the motion to correct error relied. Mr. Curto does not question the appropriateness of our considering the juror's affidavit but responds to the merits of Ms. Henri's appellate claims. We will do likewise.

Among various items in her affidavit, the juror declared that during deliberations, when "it was clear that a majority of the jurors were in favor of a verdict for [Mr. Curto], but I was not," the bailiff was called into the jury room and asked if the decision needed to be unanimous. Appellant's App'x at 46. According to the affidavit, the bailiff left and then returned and "told us the jury would have to keep deliberating until we could reach a unanimous verdict." *Id.* at 47. The affidavit then reports that, when it became "more certain that I was the only juror who wanted to vote in favor of [Ms. Henri]," the juror privately told the bailiff that the jury was hopelessly deadlocked and asked if she could "get off the jury," to which the bailiff shook her head "no," and deliberations continued. *Id.*

In a detailed five-page entry, the trial court denied Ms. Henri's motion to correct error. The court's explanation of its decision included its own pertinent factual recollection:

> A very short period of time after this panel was charged, the bailiff did convey to me that a juror had a question about the requirement that a verdict had to be unanimous. As they had only been deliberating a short while and that they had been clearly instructed about the need for a unanimous verdict I instructed the bailiff to simply tell the jury to continue their deliberations.
> I have no knowledge about this juror requesting to get off the jury, but even if I had, the time they had spent in deliberations was so brief, approximately 20 minutes, that to consider a jury to have been "hopelessly deadlocked" in such a short time would not have been seriously considered and such request would not have been granted.

*Id.* at 7.[1]

---

[1] The trial court entry denying Ms. Henri's motion to correct error concluded:
> This appears to be a case of a caring juror, who after going through the deliberative process and stating publicly, in open court, that she agreed with the verdict finding against [Ms. Henri] and awarding [Mr. Curto] a $45,000 judgment, has had second thoughts afterward. There is much evidence in studies and anecdotally that this does happen in emotionally charged cases. It is the vote upon the verdict at the close of the evidence, however, that the law relies upon.

Appellant's App'x at 10.

**(a) Responding to Jury Question Without Informing Counsel**

Ms. Henri contends that the trial court erroneously responded to the juror's question without first informing counsel, requiring reversal of the verdict and a new trial.

When a jury directs a question to the trial court, the "better practice [is] for the judge to [notify] the parties before sending his response to the jury." Rogers v. R.J. Reynolds Tobacco Co., 745 N.E.2d 793, 796 (Ind. 2001). If this procedure is not utilized, the resulting judge-to-jury ex parte communication creates a rebuttable presumption of error, but is not per se grounds for reversal. *Id.* at 795 (citing Grey v. State, 553 N.E.2d 1196, 1198-99 (Ind. 1990)). "In deciding whether the presumption of harm has been rebutted, we evaluate the nature of the communication to the jury and the effect it might have had upon a fair determination." *Id.* (citing Smith v. Convenience Store Distrib. Co., 583 N.E.2d 735, 738 (Ind. 1992)). One significant factor in determining the effect of an ex parte communication upon the jury's decision-making is whether or not the court's response to the jury contained any new information regarding the facts or law of the case. *See, e.g.*, *id.*; Marks v. State, 864 N.E.2d 408, 413 (Ind. Ct. App. 2007).

In the present case, immediately before jury deliberations began, the court gave its final jury instructions, which included this express directive: "In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous."[2] Final Instruction No. 16 also informed the jury: "Do not sign any verdict form for which there is not unanimous agreement." Appellant's App'x at 38. The jurors received the final instructions both orally and in writing.

Thus, the trial court's response through the bailiff[3] to the jury question regarding the ne-

---

[2] The trial court's entry denying Ms. Henri's motion to correct error states that Final Instruction No. 15 clearly informed the jury that its verdict needed to be unanimous. Appellant's App'x at 7. Final Instruction No. 15 was not included in the Appellant's Appendix but is provided in the Addendum to Brief of Appellee and goes unchallenged in the Reply Brief of Appellant. Final Instruction No. 15 is a verbatim copy of Indiana Civil Pattern Jury Instruction No. 3.17 (Rel. 6—11/05 Pub. 63101), Matthew Bender & Company (2008).

[3] Ms. Henri contends that the trial court "delegated the response to the bailiff." Appellant's Br. at 36. We cannot agree with this characterization in light of the court's instructions to the jury and directions to the

cessity of a unanimous verdict did not introduce any new information regarding the law or the facts of the case nor was it prejudicial to Ms. Henri. Any presumed prejudice resulting from the failure of the trial court to first consult with counsel is therefore rebutted.

## (b) Content of Response to Jury Question

Ms. Henri separately argues that the trial court's response to the jurors constitutes reversible error because it created an impression that a hung jury would not be permitted, thus having the effect of improperly coercing a verdict and resulting in an unfair trial.[4] This assertion is predicated on the juror affidavit's statement that, when the bailiff returned after being asked if the verdict needed to be unanimous, "she told us the jury would have to keep deliberating until we could reach a unanimous verdict."[5] *Id*. at 46-47.

Assuming that the juror's recollection accurately reflected the bailiff's words, the trial court's oral and written jury instructions nevertheless precisely advised, in relevant part:

> It is your duty, as jurors, to consult with one another and to deliberate with the goal of reaching an agreement, *if you can do so without violence to individual judgment*. Each of you must decide the case for yourself, but do so only after impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous. *Do not surrender your honest conviction as to the weight or effect of evidence* solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Final Instruction No. 15, *see supra* n.2 (emphasis added). Particularly in light of the content of this jury instruction, we are not persuaded that the bailiff's alleged answer to the jury was coercive, or that it resulted in juror coercion or deception, or that it resulted in an unfair trial.

---

bailiff. *See* <u>Wilson v. State</u>, 511 N.E.2d 1014, 1017-18 (Ind. 1987) (holding that a bailiff's reply to jury inquires by directing jurors to the court's instructions was innocuous and not prejudicial).

[4] Ms. Henri refers us to Indiana Code § 34-36-1-7, which provides in relevant part: "The jury *may* be discharged by the court under any of the following circumstances: . . . (4) The jury has been kept together until it satisfactorily appears that there is no probability of the members agreeing upon a verdict." (Emphasis added.) She correctly argues from this statute that mistrial is available in civil litigation.

[5] In the entry denying the motion to correct error, the trial court advises that, in response to the inquiry, it "instructed the bailiff to simply tell the jury to continue their deliberations." Appellant's App'x at 7.

### (c) Juror's Cell Phone Use During Deliberations

Ms. Henri further challenges the verdict on the ground that one juror's receipt of an incoming mobile telephone call during deliberations created pressure to reach a hasty verdict. This claim is based on the following assertions in the juror's affidavit:

> While deliberation was ongoing, the mobile telephone of one juror rang. That juror . . . appeared to turn the telephone off. Deliberation continued and her telephone rang again. At that point she left the jury room to get the bailiff. She returned with the bailiff, and the bailiff stood in the doorway of the jury room while [the other juror] took the call. I was able to hear [the other juror] tell the other party to the telephone call that she would get to class as soon as she could.

Appellant's App'x at 48. Ms. Henri acknowledges that the jury had been instructed: "Once you begin your deliberations, do not use cellular telephones or any other device to communicate with anyone outside the jury room. If you need to make a telephone call during deliberations, inform the bailiff." Final Instruction No. 16, Appellant's App'x at 38.

To merit a new trial upon a claim of juror misconduct, the challenger "must show that the misconduct was gross and probably harmed" the challenging party. Godby v. State, 736 N.E.2d 252, 256 (Ind. 2000). This standard is equally applicable to civil jury trials. *See* Becker v. Fisher, 852 N.E.2d 46, 49 (Ind. Ct. App. 2006); S. Bend Clinic, Inc. v. Kistner, 769 N.E.2d 591, 592-93 (Ind. Ct. App. 2002). Determining whether gross misconduct in all likelihood harmed the complaining party is within the trial court's discretion. Godby, 736 N.E.2d at 256; Lopez v. State, 527 N.E.2d 1119, 1130 (Ind. 1988).

Ms. Henri presented her claim of error due to the juror's cell phone use in her motion to correct error. It was denied by the trial court, which concluded that "[n]othing about these events comprise[s] misconduct in any form." Appellant's App'x at 8. On appeal, Ms. Henri has not established that the alleged receipt of a cell phone call with the apparent approval of the bailiff constituted misconduct, and has shown neither gross misconduct nor probable harm. Reversal and a new trial are not warranted on this issue.

We additionally observe that permitting jurors, other trial participants, and observers to

6

retain or access mobile telephones or other electronic communication devices, while undoubtedly often helpful and convenient, is fraught with significant potential problems impacting the fair administration of justice. These include the disclosure of confidential proceedings or deliberations; a juror's receiving improper information or otherwise being influenced; and a witness's or juror's distraction or preoccupation with family, employment, school, or business concerns. These and other detrimental factors are magnified due to swift advances in technology that may enable a cell phone user to engage in text messaging, social networking, web access, voice recording, and photo and video camera capabilities, among others.[6] The best practice is for trial courts to discourage, restrict, prohibit, or prevent access to mobile electronic communication devices by all persons except officers of the court during all trial proceedings, and particularly by jurors during jury deliberation.

### (d) Participation of Alternate Juror

Ms. Henri's final claim of improper jury deliberations relates to the conduct of an alternate juror. This claim too is based on the juror affidavit and alleges that the alternate juror communicated with the regular jurors during deliberations by making noises and gestures "that suggested she wanted to speak, but had caught herself," precipitating other jurors to "giggle or snicker." *Id.* at 47. The affidavit also asserted that the alternate juror used "gestures and nonverbal noises to interrupt during times when statements were made that were supportive of [Ms. Henri's] case," and that the alternate juror paced back and forth and eventually "got on the floor and began exercising," causing other jurors to laugh. *Id*.

We note that, upon the trial court's receipt of the final jury verdict and after the jury was

---

[6] Cases involving claims of juror error based on such technology are sprouting up with some regularity. *See* John Schwartz, *As Jurors Turn to Web, Mistrials Are Popping Up*, N.Y. Times, Mar. 18, 2009, at A1. *See, e.g.*, United States v. Siegelman, No. 2:05-cr-119-MEF-CSC, 2007 WL 1821291 (M.D. Ala. June 22, 2007); Commonwealth v. Guisti, 867 N.E.2d 740 (Mass. 2007) (juror email); People v. McNeely, No. D052606, 2009 WL 428561 (Cal. Ct. App. Feb. 23, 2009) (juror blogging) (unpublished), *rev. denied*; State v. Goehring, No. OT-06-023, 2007 WL 3227386 (Ohio Ct. App. Nov. 2, 2007) (juror blogging); Gregoire v. City of Oak Harbor, No. 58544-4-I, 2007 WL 3138044 (Wash. Ct. App. Oct. 29, 2007) (juror blogging), *rev. granted in part*; Commonwealth v. Rodriguez, 828 N.E.2d 556 (Mass. App. Ct. 2005) (juror cell phone use); Scott F. Davis, *No New Trial Over Juror's Twittering*, N.W. Ark. Times, Apr. 4, 2009.

polled, Ms. Henri's counsel requested and was permitted to ask the alternate juror, "[D]id you participate in the discussions of the deliberations?" The alternate answered, "No." Tr. at 655-56. The trial court, in ruling on Ms. Henri's motion to correct error, found that the juror-affiant's "detailed account of the conduct of the alternate may describe annoying behavior but falls far short of misconduct." Appellant's App'x at 8.

Ms. Henri cites Griffin v. State, in which this Court held that an alternate is an "outside influence" for purposes of Indiana Evidence Rule 606(b).[7] 754 N.E.2d 899, 903 (Ind. 2001). In Griffin, a deadlocked jury asked the alternate for her opinion, whereupon she stated her belief in the defendant's guilt and her reasons therefore. A regular juror later submitted an affidavit stating that the alternate's input affected her vote. *Id*. at 900-01. This Court held that "in the overall trial context. . . . [t]he alternate did not add any fresh perspective to the discussion," the alternate juror's "only influence was adding one more 'me, too' to the collective voice of the jury majority," and that, therefore, the defendant had "not shown either gross misconduct or probable harm." *Id*. at 903.

Here, while the alleged behavior of the alternate is disappointing and immature, it does not rise to gross misconduct that was likely injurious to Ms. Henri. The juror's affidavit does not demonstrate a likelihood that the antics of the alternate juror affected the decision of the regular jurors. Unlike Griffin, in which the alternate spoke about the merits of the case, this alternate was at worst an irresponsible and impolite distraction. We decline to find that the alternate's conduct amounted to gross misconduct that rendered a fair trial unlikely.

**(e) Cumulative Effect of Juror Communication Issues**

Ms. Henri urges that even if none of these alleged improper external communications with the juror constitutes grounds for reversal in isolation, their cumulative effect is prejudicial. *See* Jewell v. State, 624 N.E.2d 38, 43 (Ind. Ct. App. 1993) (holding that ex parte communications that were individually insufficient to warrant reversal could, together, require a new trial).

---

[7] Evidence Rule 606(b) permits a juror to testify as to the validity of a verdict only under certain conditions, one of which concerns "whether any outside influence was improperly brought to bear upon any juror."

Such is not the case here. Whether assessed separately or cumulatively, the alleged improper jury communications, in our judgment, fail to establish any significant possibility that the deliberative process was impaired or that the resulting trial was unfair.[8]

## 2. Trial Court Response to Report of Impasse

Ms. Henri contends that the trial court failed properly to assist the jury at an impasse, arguing that the court should have informed counsel and then should have aided the jury pursuant to Indiana Jury Rule 28, the failure of which denied her a fair trial. As to this issue, the juror's affidavit states:

> After the bailiff told us we would have to have a unanimous verdict, it became more certain that I was the only juror who wanted to vote in favor of [Ms. Henri]. One of the other jurors suggested that I might be allowed off the jury. I then left the jury room to talk to the bailiff. I told her we were hopelessly deadlocked, and asked if I could get off the jury. The bailiff shook her head "no." I returned to the jury room and continued to deliberate with the other jurors.

Appellant's App'x at 47. As previously noted, the trial judge reported receiving the juror's claim of deadlock approximately twenty minutes after the jury began deliberating. *Id*. at 7.[9]

Ms. Henri urges that the affiant-juror's indication of a hopelessly deadlocked jury should have triggered Indiana Jury Rule 28, which states that:

> If the jury advises the court that it has reached an impasse in its deliberations, the court *may*, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, *may* direct that further proceedings occur as appropriate.

Ind. Jury R. 28 (emphasis added). Also included in Ms. Henri's argument on this point is her contention that the trial court erroneously failed to advise the parties' attorneys of the juror's re-

---

[8] Ms. Henri also claims that the trial court erred in denying her request to supplement the record by taking testimony from the bailiff for the purpose of supporting her motion to correct error. To remedy this alleged error, she asks either that the review of her appellate claims accept the juror affidavit's content as true or that the case be remanded to the trial court for a hearing at which the bailiff can be questioned. Because this opinion responds to the allegations as presented in the affidavit, further discussion of this claim is unnecessary.

[9] *See supra* text accompanying note 1.

9

ported stalemate and that her request to be excused from the jury should have been timely reported to the parties' attorneys.

Jury Rule 28 was adopted to afford trial courts greater flexibility in dealing with jury impasses. *See generally* Ronco v. State, 862 N.E.2d 257 (Ind. 2007). Before Rule 28, a trial court was required to reread all instructions in response to a jury question. *Id*. at 259. With the adoption of Rule 28, this Court intended to encourage trial judges to fashion creative, resourceful, and sensible responses to individualized case circumstances to assist jurors confronted with apparent impasse. *See* Tincher v. Davidson, 762 N.E.2d 1221, 1224 (Ind. 2002). Judicial resort to Rule 28 techniques is not mandatory, however. The rule merely "confers discretionary authority." Ronco, 862 N.E.2d at 260. We decline to find reversible error from the fact that the trial court exercised its discretion not to employ Jury Rule 28 in response to the juror's report of "deadlock" in this case.

Ms. Henri further contends that the juror's report of deadlock and inquiry regarding removal from the jury should have been reported to the parties' counsel, pursuant to the directive in Indiana Code § 34-36-1-6[10]:

> If, after the jury retires for deliberation:
> (1) there is a disagreement among the jurors as to any part of the testimony; or
> (2) the jury desires to be informed as to *any point of law arising in the case*;
> the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

*Id.* (emphasis added). She argues that the juror's assertions constituted "points of law" under this statute, and that the trial court's failure to inform counsel denied her a fair trial.

A trial court is not required to provide information "automatically and mechanically every time the jury requests it"; rather, it has discretion to determine whether a jury question relates to the jury's desire to be informed as to a point of law arising in the case. Foster v. State, 698 N.E.2d 1166, 1170 (Ind. 1998). If the court determines that the jury wishes to be so informed, the court is required to answer the question after notice to the parties or their attorneys.

---

[10] In quoting and discussing the language from Indiana Code § 34-*36*-1-6, the appellant's brief repeatedly cites to a non-existent code section, § 34-*6*-1-6, which citation we treat as inadvertent and unintended.

*Id.*; Pendergrass v. State, 702 N.E.2d 716, 720 (Ind. 1998). The statutory phrase "any point of law arising in the case," however, is construed narrowly and mandates that the trial court inform counsel and provide a discrete answer only when the jury question "points up 'an error or legal lacuna in the final instructions.'" Foster, 698 N.E.2d at 1171 (quoting Jenkins v. State, 424 N.E.2d 1002, 1003 (Ind. 1981)). In Foster, we declined to find error in a trial court's refusal to answer a jury question regarding whether a prosecutor had discretion to determine what charges can be filed. *Id.*

For at least two reasons, we reject Ms. Henri's contention that the trial court committed reversible error by failing to respond as required by Indiana Code § 34-36-1-6 to the affiant-juror's assertion of jury deadlock and her request to be excused from the jury. First, neither of these declarations revealed an error or omission in the final instructions sufficient to trigger the statute's requirement of mandatory action by the trial court. Second, the juror-affiant was not the jury foreperson and her private statement and inquiry to the bailiff were not presented on behalf of the whole jury, thus failing to implicate the statutory language that "the *jury* desires to be informed."

We find no reversible error in the trial court's failure, after the affiant-juror's asserted report of deadlock and inquiry about whether she could "get off" the jury, to provide impasse assistance to the jury, to otherwise provide a discrete answer, or to inform the parties' counsel.

### 3. Sufficiency of the Evidence Supporting the Counterclaim

Ms. Henri challenges the jury's verdict in favor of Mr. Curto's counterclaim on grounds of insufficient supporting evidence to establish each of the elements necessary for recovery for tortious interference with a contractual relationship. In response, Mr. Curto argues that the evidence was sufficient to establish each of the elements set forth in Final Instruction No. 14, which governed his counterclaim, and to which Ms. Henri did not object at trial. The parties' dispute leads us to consider whether an appellate claim of insufficient evidence may be raised for the

11

first time on appeal.[11]

At no time during trial did Ms. Henri challenge the sufficiency of evidence supporting Mr. Curto's counterclaim. She did not move for judgment on the evidence pursuant to Indiana Trial Rule 50—neither after the presentation of Mr. Curto's evidence, nor at the conclusion of all the evidence, nor after the jury returned its verdict. This rule permits a party to seek withdrawal of an issue from the jury and to enter judgment in favor of the moving party where "all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it." Ind. Trial Rule 50(A). Nor did Ms. Henri object to Instruction No. 14, which purported to present the elements required to be proven to establish Mr. Curto's counterclaim. Finally, Ms. Henri's motion to correct error pursuant to Trial Rule 59 sought a new trial based on the juror affidavit, but did not question the sufficiency of evidence supporting the jury's verdict on Mr. Curto's counterclaim. Trial Rule 50(A)(4) authorizes a party to move for a judgment on the evidence "in a motion to correct errors."

Ms. Henri argues that the sufficiency of evidence may be challenged for the first time on appeal, citing Tipmont Rural Elec. Membership Corp. v. Fischer, 716 N.E.2d 357 (Ind. 1999), and Walker v. Pillion, 748 N.E.2d 422 (Ind. Ct. App. 2001).

In Tipmont, the defendant in a civil jury trial sought to appeal on grounds that the amount of the jury verdict exceeded the evidence, but did not present this issue by a motion to correct error under Trial Rule 59. We observed that requests for additur or remittitur ordinarily must first be presented to the trial judge under Rule 59 as a prerequisite to appeal. But, characterizing a claim that the verdict was outside the scope of the evidence as presenting "a more ordinary question about the sufficiency of the evidence supporting the verdict," we allowed it to be presented on appeal "without the need for a motion to correct error." 716 N.E.2d at 358. Our opinion in Tipmont, however, did not examine whether a claim of insufficient evidence may first be raised on appeal without being first presented in a Rule 50 motion for judgment on the evidence.

---

[11] If a party has procedurally defaulted, "then an appellate court can raise the issue *sua sponte*." Hughes v. State, 880 N.E.2d 1186, 1188 (Ind. 2008) (citing Bunch v. State, 778 N.E.2d 1285, 1289 (Ind. 2002)).

Two years later, in <u>Walker</u>, the Court of Appeals held that a defendant was not required to move for judgment on the evidence or to file a motion to correct error as a prerequisite to presenting an appellate claim of insufficient evidence. <u>Walker</u>, 748 N.E.2d at 426. Concluding that the Indiana Supreme Court had "not specifically addressed [the] disharmonious feature of our current trial rules," i.e., the interplay between Rule 59(A) and subsections (4) and (5) of Rule 50(A), the court chose to address the appellant's sufficiency issue despite his failure to have raised it in the trial court under Rule 50. As recently as last year, however, the Court of Appeals expressed significant concerns about this view. <u>Prime Mortgage USA, Inc. v. Nichols</u>, 885 N.E.2d 628, 671-72 (Ind. Ct. App. 2008), *trans. not sought*.[12]

This issue is governed by the interaction of Trial Rules 50 and 59, which provide in relevant part as follows:

> **Rule 50. Judgment on the Evidence (Directed Verdict)**
> **(A) Judgment on the Evidence—How Raised—Effect.** Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evi-

---

[12] The <u>Nichols</u> Court stated:
Also, we find Nichols's argument similar to one relating to the sufficiency of the evidence . . . . This court has held that "a party may raise a sufficiency of the evidence claim for the first time in an appellant's brief." <u>Jamrosz v. Res. Benefits, Inc.</u>, 839 N.E.2d 746, 757 (Ind. Ct. App. 2005), *trans. denied*; *see also* <u>In re P.C.</u>, 137 Cal. App. 4th 279, 40 Cal.Rptr.3d 17, 23 (Cal. Ct. App. 2006) ("The general principle of forfeiture prohibits parties from addressing on appeal issues not raised at trial. However, the argument that a judgment is not supported by substantial evidence is an 'obvious exception to the rule.'"); <u>Hoxie Implement Co., Inc. v. Baker</u>, 65 S.W.3d 140, 153 (Tex. Ct. App. 2001) ("Being an attack on the sufficiency of the evidence, [the appellant] need not have presented the issue below to have preserved it for review.")[,] *review denied*. *But see* <u>New Props., L.L.C. v. Stewart</u>, 905 So.2d 797, 801-02 (Ala. 2004) ("[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review."). On the other hand, we have also indicated that we "will not affirm on a theory not litigated in the trial court." <u>Estate of Hann v. Hann</u>, 614 N.E.2d 973, 978 (Ind. Ct. App. 1993). Similarly, we find it difficult to affirm the trial court's decision on the basis that [the plaintiff's business partner] failed to meet his burden of demonstrating that the exemption was reasonably necessary, as there is no indication in the record that either party or the trial court considered this issue. *Cf.* <u>Felsher v. Univ. of Evansville</u>, 755 N.E.2d 589, 599 (Ind. 2001) (recognizing that where issues have not been pled, "we find it difficult to use them here as a basis to sustain the trial court's judgment, as we sometimes do, 'on any grounds apparent in the record'"); <u>Stafford v. Barnard Lumber Co., Inc.</u>, 531 N.E.2d 202, 204 (Ind. 1988) (recognizing that "an appellate court is bound to affirm the trial court's decision on any theory *before the trial court* which is supported by the evidence" (emphasis added)).
885 N.E.2d at 671-72.

dence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. A party may move for such judgment on the evidence

    (1) after another party carrying the burden of proof or of going forward with the evidence upon any one or more issues has completed presentation of his evidence thereon; or

    (2) after all the parties have completed presentation of the evidence upon any one or more issues; or

    (3) after all the evidence in the case has been presented and before judgment; or

    (4) *in a motion to correct errors*; or

    (5) may raise the issue upon appeal for the first time in criminal appeals *but not in civil cases*; or

    (6) The trial court upon its own motion may enter such a judgment . . . .

**Rule 59. Motion to correct error**

  **(A) Motion to correct error—When mandatory.** A Motion to Correct Error is not a prerequisite for appeal, except when a party seeks to address:

    (1) Newly discovered material evidence . . . ; or

    (2) A claim that a jury verdict is excessive or inadequate.

All other issues and grounds for appeal *appropriately preserved during trial* may be initially addressed in the appellate brief.

(Emphasis added.) And Rule 59(J), which relates to a manner of granting relief on a motion to correct error, directs the actions to be taken by a trial court if, in ruling upon a motion to correct error, the jury verdict is determined to be unsupported by the evidence.

Except for matters that fall under Rule 59(A)(1) and (2), a motion to correct error is not a mandatory prerequisite for appeal. But in declaring that all other issues may be presented initially on appeal, 59(A) explicitly requires that they have been "appropriately preserved during trial." This prerequisite condition was not considered in Walker.

A strict, literal application of the qualifying phrase "appropriately preserved *during trial*" in Rule 59(A) would preclude a party from presenting an appellate challenge of insufficient evidence despite the party having raised the issue with the trial court in a motion for judgment on the evidence through a motion to correct error, as authorized by Rule 50(A)(4), or arguably even if the party filed a motion for judgment on the evidence post-verdict but before the entry of judgment, as permitted by Rule 50(A)(3). We decline to employ this construction. Rather, to harmonize Rule 59(A) with Rules 50(A)(4) and 59(J), both of which contemplate a claim of in-

14

sufficient evidence being presented in a motion to correct error, we hold that such a claim is "appropriately preserved during trial" if it is properly asserted in a motion for judgment on the evidence filed either before the case is submitted to the jury, after submission and before judgment is entered on the verdict, or in a motion to correct error. We intend the phrase "during trial" to require that a claim of insufficient evidence must be preserved by proper presentation to the trial court. Such a challenge may not be initially raised on appeal in civil cases if not previously preserved in the trial court by either a motion for judgment on the evidence filed before judgment or in a motion to correct error.

Ms. Henri seeks to challenge the sufficiency of evidence supporting the jury's civil damage verdict for Mr. Curto on his counterclaim, but she failed to present this issue during trial by a Rule 50 motion for judgment on the evidence or by the post-trial Rule 59 motion to correct error. Because this issue was not preserved, it is procedurally defaulted.[13]

### 4. Appellate Fees

In objecting to certain language in Ms. Henri's brief that he characterizes as defamatory and in bad faith, Mr. Curto has requested an award of appellate fees pursuant to Indiana Appellate Rule 66(E). This rule authorizes an appellate court to "assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith." We decline to exercise this authority here.

### Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.

---

[13] Ms. Henri's appellant's brief also argues that various policy interests favor her good faith in reporting the incident, which she contends precludes proof of the absence of justification element of tortious interference. We consider these assertions to be part of her appellate argument claiming insufficient evidence, which we find to be procedurally defaulted.