James R. GRIFFIN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S02–0101–CR–43.

Supreme Court of Indiana.

Sept. 7, 2001.

Brent Westerfeld, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

James Griffin asks for a new trial on his carjacking charges because an alternate juror improperly expressed her belief in his guilt during his jury's deliberations. He also says his former attorney should have been allowed to testify that another man confessed to the crime. We affirm.

**Facts and Procedural History**

Around 2:45 p.m. on March 5, 1997, Clifford Wright was driving to a hair appointment when he saw Patricia Griffin standing at the corner of Massachusetts and College Avenues in Indianapolis. Although the two had never met, Ms. Griffin accepted a ride home and agreed to see Wright after his appointment, around 5:30. When Wright returned to Ms. Griffin's house, he was invited in by a man who identified himself as James. A woman named Twyanna was also there, but Ms. Griffin was not.

The three chatted for about twenty minutes and at one point James left the room. When he returned, Twyanna asked him if he got his pistol. James and Twyanna asked Wright for "a ride around the corner," and he agreed. (R. at 289.) Minutes after the three left in Wright's car, Twyanna asked Wright if he realized he was being "set up." (R. at 290–91.) Wright reached for his keys but Twyanna jerked his hand away. Wright was forced out of the car after handing over his billfold and $33.

Wright viewed 500 police photographs but did not spot James. When the police learned that Ms. Griffin had a brother named James, they showed Wright another six photos, from which Wright positively identified Griffin. A jury found Griffin guilty of carjacking, a class B felony,[1] and the court sentenced him to six years with three suspended.

On appeal, Griffin raised four issues. *Griffin v. State*, 735 N.E.2d 258 (Ind.Ct. App.2000). We address the two contentions noted above, and summarily affirm the Court of Appeals on the remainder.[2] Ind. Appellate Rule 58(A)(2).

**I. The Alternate Juror's Statement**

After Griffin's jurors deliberated for about two and a half hours, they sent a note advising the judge that they could not agree on a verdict. The judge replied, "Please continue." (R. at 435.)

Griffin asserts, based on juror affidavits submitted with his motion to correct error, that several jurors then sought to break the deadlock by asking the alternate her opinion on Griffin's guilt. This violated the judge's specific instruction prohibiting the alternate's participation in deliberations.[3] The alternate answered that she

---

1. Indiana Code Ann. § 35–42–5–2 (West 1997) defines carjacking as "knowingly or intentionally tak[ing] a motor vehicle from another person ... (1) by using or threatening the use of force on any person; or (2) by putting any person in fear...."

2. Griffin's remaining arguments were that newly-discovered evidence justified retrial and that the evidence supporting his conviction was insufficient.

3. The judge gave the following final instruction:

   You are instructed that the alternate juror who has been selected in this case and who has been present during the entire course of this trial will be allowed back into the jury

thought Griffin was guilty because the victim's identification was reliable based on his twenty-minute conversation with the carjacker.

One juror stated in her affidavit that the alternate's input "affected my vote." (R. at 164.)

■ Juror misconduct involving an out-of-court communication with an unauthorized person creates a rebuttable presumption of prejudice. *Currin v. State,* 497 N.E.2d 1045, 1046 (Ind.1986). The trial court nonetheless denied Griffin's motion: [4]

The Court finds that based on the evidence presented, the comments allegedly made by the alternate juror, did not rise to the level of impermissible juror misconduct as there was no showing that if the alternate, in fact, did improperly speak during deliberations, that this affected the decision of any of the twelve regular jurors. In fact, each of the jurors was individually polled after the verdict and each orally said it was their individual and collective verdict.

(R. at 190.)

■ A threshold question is whether the juror affidavits may be considered at all. Indiana Evidence Rule 606(b), adopted in 1994, says:

*Inquiry into Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify (1) to drug or alcohol use by any juror, (2) on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or (3) whether any outside influence was improperly brought to bear upon any juror. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may not be received for these purposes.

Griffin argues that the alternate's opinion was an "outside influence" under the third exception, and we agree. The affidavits are therefore admissible, at least as evidence (which the State did not refute) that the alternate improperly participated in jury deliberations. We therefore proceed to consider the ramifications of this conduct.

■ A defendant seeking a new trial because of juror misconduct must show that the misconduct (1) was gross and (2) probably harmed the defendant. *Lopez v. State,* 527 N.E.2d 1119 (Ind.1988). We review the trial judge's determination on these points only for abuse of discretion, with the burden on the appellant to show that the misconduct meets the prerequisites for a new trial. *Mitchell v. State,* 726 N.E.2d 1228 (Ind.2000) (citations omitted).

[5] To meet his burden, Griffin relies in part on one juror's assertion that the

---

room with the regular 12 jurors under strict instruction that the alternate juror is not to participate in any way in the deliberations of the regular jury in this case. In the event that the alternate juror is needed to replace a regular member of the jury, the alternate will be called back into the courtroom and specifically advised that the alternate may then participate in the delibera-

tions. Until such time, the alternate may not in any way take part in the deliberations of the jury in this case.
(R. at 431–32.)

4. Judge Pro Tem W.T. Robinette presided over the trial and sentencing. (R. at 135, 442.) Judge Gary L. Miller ruled on the motion to correct errors. (R. at 191, 463.)

alternate's opinion affected her vote. (R. at 164; Appellant's Br. at 11.) We must therefore decide whether this statement impeaching the jury's verdict is admissible. In doing so we look to the history and policy behind the general rule that jurors may not later seek to nullify their verdicts via affidavit. *See, e.g., Taylor v. Garnett*, 110 Ind. 287, 11 N.E. 309 (1887).

This Court has long supported the rule prohibiting jurors from later impeaching their verdicts. The policies underlying this rule are important. Allowing such juror affidavits could defeat the jury's solemn acts under oath, open the door to post-trial jury tampering, and allow dissatisfied jurors to destroy a verdict after assenting. *Id.*

Moreover, if impeachment were allowed, "[t]he sanctity of verdicts would [ ] be diminished and no verdict could ever be final. Jurymen would forever be harassed." *Turczi v. State*, 261 Ind. 273, 275, 301 N.E.2d 752, 753 (1973) (citations omitted). For these reasons we have historically been reluctant to open the door to a "contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries." *Stinson v. State*, 262 Ind. 189, 198, 313 N.E.2d 699, 704 (1974).

The problem, of course, is how to protect such vital defendants' rights as the right to confront witnesses (which may be violated if a jury considers information that was not in evidence) or the right to an impartial jury, if the best (and often only) witnesses to jury improprieties cannot be heard. *See Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). The U.S. Supreme Court considered that dilemma over a century ago and held that a juror "may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." *Mattox v. United States*, 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (quoting *Woodward v. Leavitt*, 107 Mass. 453 (1871)). This Court adopted the *Mattox* approach in *Fox v. State*, 457 N.E.2d 1088, 1093 (Ind.1984).

Ten years after *Fox*, we adopted Rule 606(b) as Indiana law on juror impeachment of verdicts. This is our first occasion to decide whether the common law prohibition against a juror testifying about how an outside influence affected his decision still applies when a defendant invokes one of the Rule 606(b) exceptions.

Federal practice may inform our analysis. Federal Rule of Evidence 606(b) is very similar to Indiana's rule.[5] Federal courts generally continue to follow the rule of *Mattox*, and will accept juror affidavits stating that deliberations were tainted by improper information or influence, but disregard any statements on the effect of that information or influence on the juror's decision. *See* 2 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* 905 (7th ed.1998).[6] As the Seventh Circuit has explained:

---

5. The only substantive difference is that the federal rule does not contain Indiana's explicit exception allowing jurors to submit affidavits regarding juror drug or alcohol use. Ind. Evid. R. 606(b); Fed.R.Evid. 606(b).

6. This says, in relevant part:
   While Rule 606(b) permits postverdict inquiry into extraneous information and out-

side influences, it does *not* permit juror testimony as to the actual effect of these matters on the testifying juror or on any other juror.... So, in assessing whether a new trial is required as a result of extraneous information and outside influences, the Trial Judge must reason by inference as to the effect of these matters on jury deliberations.

In evaluating a claim that the jury was improperly influenced by extraneous material, "a district court must ignore a juror's comment regarding how a particular piece of material disposed the juror toward a particular verdict, and the district court must make an independent determination of the likely effect of the prejudicial material."

*United States v. Paneras,* 222 F.3d 406, 412 n. 1 (7th Cir.2000)(quoting *United States v. Berry,* 92 F.3d 597, 601 (7th Cir.1996)).

This approach would seem to restrain the potential for a losing party to provoke virtual re-enactments of the deliberation through competing affidavits purporting to describe the thought processes of individual jurors. As Judge Allen Sharp observed, one risk in allowing juror impeachment of verdicts is that "[i]t is all too easy for ingenious counsel to prepare carefully worded affidavits to cast doubt on a jury verdict." *Lindsey v. State,* 282 N.E.2d 854, 861 (Ind.App.1972).

Thus, the fact that one juror says the alternate's input "affected" her decision is not part of the analysis governing the request for a new trial. Rather, the trial court must consider the alternate's conduct in the overall trial context. The alternate did not add any fresh perspective to the discussion; the other jurors were well aware that the State's case relied on a strong eyewitness identification.[7] It is difficult to believe that if eleven other jurors favored conviction, the twelfth only acceded because the alternate also favored conviction when the majority solicited one more view.

■ Our skepticism takes into account the fact that an alternate is like a regular juror in two important respects: the alternate has been through the same voir dire

to safeguard against bias or knowledge of information not in evidence, and has heard exactly the same evidence. Intrajury influence is not sufficient to overturn a verdict. *See, e.g., Johnson v. State,* 700 N.E.2d 480, 481 (Ind.Ct.App.1998) ("Jurors may not decide, in hindsight, that the weighing process overcame their spirit or will."). *See also Ferguson v. State,* 489 N.E.2d 508, 510 (Ind.1986) (citations omitted) ("[T]he legal bar to the impeachment of a verdict by a juror who participated in its return is greatest where the interchange between jurors is the source of the problem, and not a communication from some nonjuror.").

■ An alternate is not, of course a member of the jury, and he or she qualifies as an outside influence under Rule 606(b). Here, however, the alternate's only influence was adding one more "me, too" to the collective voice of the jury majority. Under the facts presented, Griffin has not shown either gross misconduct or probable harm. The trial judge therefore acted within the bounds of his discretion in denying relief based on juror misconduct.

## II. Hearsay Cloaked as Impeachment

■ In pretrial proceedings, the court granted use immunity to William Dulin, Patricia Griffin's former boyfriend. It also granted a defense request to treat Dulin as a hostile witness "if he is called." (R. at 198.) Dulin took the stand and in response to defense questioning denied having confessed to Griffin's former attorney, Lorinda Youngcourt, that he committed the carjacking.

Griffin then called Youngcourt and sought to elicit her testimony that Dulin had confessed to the crime.[8] The prosecu-

---

7. The prosecutor emphasized this point in her closing argument. (R. at 407–08.)

8. The defense later made an offer to prove documenting this testimony for the record.

tor objected on grounds of hearsay and the court sustained the objection.

Griffin argues that the court should have permitted the question under Ind. Evidence Rule 607,[9] which allows a party to attack his or her own witness's credibility, and Rule 613(b),[10] which allows evidence of a prior inconsistent statement made by a witness (with certain restrictions).[11] Because the purpose of his question was to impeach Dulin with his prior inconsistent statement, Griffin says, the trial court erred in sustaining the prosecutor's objection.

We recently held, however, that under Rule 607 "a party is forbidden from placing a witness on the stand when the party's sole purpose in doing so is to present otherwise inadmissible evidence cloaked as impeachment." *Appleton v. State,* 740 N.E.2d 122, 125 (Ind.2001) (citations omitted)("Because [the witness] owned the home where the events began and observed the three assailants attack the victims, it is reasonable that the State wanted him to testify for purposes other than impeachment."). The Court of Appeals had earlier recited a similar proposition:

We agree ... that "[T]he rule allowing a party to impeach his own witness may not be used as an artifice by which inadmissible matter may be revealed to the jury through the device of offering a witness whose testimony is or should be known to be adverse in order, under the name of impeachment, to get before the jury a favorable extrajudicial statement previously made by the prior witness." *The Pelican, Inc. v. Downey,* 567 N.E.2d 847, 850 (Ind.Ct.App.1991) (quoting *State v. Keithley,* 227 Neb. 402, 406–07, 418 N.W.2d 212, 215 (1988)).

Dulin did not witness any of the relevant events here.[12] The defense attorney's requests that Dulin be immunized and to question him as a hostile witness, with Youngcourt waiting in the wings, make it clear that he expected Dulin to deny having confessed to the carjacking and that the purpose of the exercise was to generate testimony pointing the finger at Dulin.[13]

The question in *Appleton* was whether the State called a witness solely to create the opportunity to impeach him with his pretrial statement. *Appleton,* 740 N.E.2d

9. Rule 607 says: "Who May Impeach. The credibility of a witness may be attacked by any party, including the party calling the witness."

10. Rule 613(b) says:

Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. . . .

11. Griffin also argues that the court should have allowed Youngcourt's testimony as a hearsay exception because it was a statement against interest of an unavailable witness. Evid. R. 804(b)(3). As the Court of Appeals correctly noted, however, Griffin has not

shown that Dulin was unavailable as defined in Evid. R. 804(a).

12. The only other substantive testimony the defense elicited from Dulin related to an Indianapolis Police Department booking sheet that listed him as James Albert Dulin, Jr. (R. at 351–57.) Dulin explained that the police had confused him and his brother, and that he only went by the name William, not James. (R. at 358.)

13. Dulin's only other connection to the case came later, when Patricia Griffin testified that Dulin showed her the stolen car some day after the crime occurred, and that Dulin confessed to her that he committed the carjacking. (R. at 381–82.) The prosecutor vigorously questioned Ms. Griffin as to whether she had told him only minutes before she took the stand that Dulin denied committing any crime. (R. at 383.)

at 125. Here, the defense called Dulin solely to create an opportunity to impeach him with Youngcourt's otherwise inadmissible hearsay testimony. The trial court properly declined to permit it.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.