**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 27 2014, 9:16 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SCOTT KING**
Scott King Group
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHRINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| VENTRISS R. HULITT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1302-CR-30 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-1003-FA-8

**January 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Ventriss Hulitt appeals his conviction of and sentence for Class A felony child molestation.[1]  He presents three issues for our review:

1.   Whether the trial court abused its discretion when it allowed L.S. to testify with a support person present;

2.   Whether the trial court abused its discretion when it denied Hulitt's motion to correct error; and

3.   Whether the trial court abused its discretion when it relied on the fact L.S. tested positive for a sexually transmitted disease as an aggravating factor when sentencing Hulitt.

We affirm.

## FACTS AND PROCEDURAL HISTORY

From late 2009 to February 2010, twenty-three-year-old Hulitt lived with Lester Steverson and Steverson's family, which included Steverson's daughter, nine-year-old L.S. Hulitt considered Steverson his father based on Steverson's prior relationship with Hulitt's mother.  Steverson's wife was hospitalized frequently and Steverson worked outside the home, so Hulitt was often left to care for L.S. and her two older sisters.  Because Steverson left for work early in the morning, Hulitt would wake up L.S. so she could shower before school.  On two occasions, Hulitt entered the shower with L.S.  The first time, Hulitt forced her to submit to anal intercourse.  The second time, he forced her to submit to anal intercourse and to perform oral sex on him.

---

[1] Ind. Code § 35-42-4-3(a).

L.S. told her father about what Hulitt had done to her, and Steverson called the police. L.S. spoke to police about the incidents and was taken to the hospital for a medical exam, which revealed she had chlamydia. On March 30, 2010, L.S. visited another doctor, who noticed some tearing in her anal area that could be explained by sexual abuse or by constipation and bowel movements. L.S. again tested positive for chlamydia. Hulitt also tested positive for chlamydia.

The State charged Hulitt with Class A felony child molesting, Class C felony child molesting,[2] and Class C felony criminal confinement.[3] During Hulitt's jury trial, the court permitted L.S. to testify with her aunt sitting near the witness stand to provide her support. The jury found Hulitt guilty of Class A and Class C felony child molesting, but it acquitted him of Class C felony criminal confinement. The trial court vacated Hulitt's conviction of Class C felony child molesting and imposed a thirty-eight year sentence for Class A felony child molesting. On December 13, 2012, Hulitt filed a motion to correct error, arguing juror misconduct occurred during his trial based on the allegation a juror discussed the case with a person outside of the jury prior to the verdict. After a hearing, the trial court denied Hulitt's motion to correct error on January 4, 2013.

## DISCUSSION AND DECISION

1. Presence of Support Person during L.S.'s Testimony

---

[2] Ind. Code § 35-42-4-3(b).
[3] Ind. Code § 35-42-3-3(b)(1).

The manner in which a trial court allows a child witness to testify is left largely to the discretion of the trial court, and we will reverse the trial court's decision only if there is a clear abuse of such discretion. *Shaffer v. State*, 674 N.E.2d 1, 6 (Ind. Ct. App 1996), *trans. denied*. We have recognized the potential trauma a child victim may face during testimony, and we have upheld decisions in which a trial court has permitted a child victim to testify under special conditions despite the possibility the special conditions would emphasize the child's testimony. *Id*. One of these special conditions is allowing a support person to sit near the child witness during the child's testimony. *Stanger v. State*, 545 N.E.2d 1105, 1112 (Ind. Ct. App. 1989) (overruled on other grounds by *Smith v. State*, 689 N.E.2d 1238, 1247 (Ind. 1997)). Nevertheless, Indiana law is "distinctly biased" against trial procedures that tend to emphasize the testimony of a single witness. *Shaffer*, 674 N.E.2d at 5.

Hulitt did not object to the fact that the trial court permitted L.S. to testify with her aunt sitting nearby as a support person. However, during her testimony, when L.S. and her aunt both began crying, Hulitt requested the intervention of the court:

> [Defense]: May we approach?
> [Court]: You may approach.
>            [FOLLOWING PROCEEDINGS HELD AT SIDEBAR]
> [Defense]: The comfort person is crying, teary eyed.
> [Court]: I see that.
> [Defense]: We need to stop the testimony. That can't happen. That – that is so prejudicial. And, for the record, the comfort person is teary eyed and crying.
> [Court]: She is.
> [Defense]: How can the defendant – how can the defendant get a fair trial with that kind of exhibition? It wasn't necessary to have a comfort person here at all, as it turns out. But that's certainly inappropriate.
> [Court]: We are going to continue with this testimony. I can't tell this

4

|           | person to stop crying.  I mean, this is very emotional testimony. And I understand your position that it may be prejudicial to the defendant, you know.  And I'm not going to answer whether it is or isn't.  But, you know, it – you know, her actions are what they are.  The victim is crying uncontrollably in many parts of her testimony as well.  And I'm not going to tell her to stop crying. |
|-----------|---|
| [Defense]: | Then I need to move for a mistrial.  I move for a mistrial.  It is highly prejudicial when the comfort person now is giving the – it's – it's almost like – |
| [Court]:  | I'm not granting a mistrial. |
| [State]:  | What – what I can do is instruct the comfort person to try to keep her emotions under control. |
| [Defense]: | Well, not – |
| [State]:  | I'm gonna [sic] ask her quietly. |
| [Defense]: | Not in front of the jury. |
| [Court]:  | Not in front of the jury. |
| [State]:  | No, it would be in her ear. |
| [Court]:  | No, not in front of the jury.  We're going to continue.  Request for mistrial denied. |
| [Defense]: | But, in fact, what's happening is, is that the comfort person is now vouching for the witness because of her actions. |
| [Court]:  | The intent here was to get through her testimony and there's absolutely no way.  I just don't – I think we're gonna [sic] be here until 8:00 o'clock, 7:00 o'clock, whatever the case may be.  I can't imagine [Defense] is going to have a few questions for the witness. |

(Tr. at 101-03.)[4]  After the exchange, L.S. continued her testimony with the presence of her aunt.  There is no indication in the record whether her aunt displayed any further emotion.

"Whenever a courtroom arrangement is challenged as inherently prejudicial, we must consider whether the practice presents an unacceptable risk that impermissible factors will come into play which might erode the presumption of innocence."  *Stanger*, 545 N.E.2d at

---

[4] The record contains two separately-paginated transcripts, one for Hulitt's trial and one for the hearing to address his motion to correct error.  We will cite to them as "Tr." and "MCE Tr." respectively.  We direct the court reporter to Ind. Appellate Rule 28(A)(2), which provides "The pages of the Transcript shall be numbered consecutively regardless of the number of volumes the Transcript requires."

1114. "If the challenged practice is not found inherently prejudicial and the defendant fails to show actual prejudice, the inquiry is over." *Id.*

As part of the discussion regarding the comfort person's display of emotion, Hulitt requested a mistrial, which the trial court denied. Whether to grant a mistrial is within the trial court's discretion. *Norcutt v. State*, 633 N.E.2d 270, 272 (Ind. Ct. App. 1994). To succeed on appeal from the denial of a mistrial, a defendant must show the conduct in question was so prejudicial that she was placed in a position of grave peril to which she should not have been subjected. *Id.* at 272–73. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision. *Id.* at 273. A mistrial is an extreme remedy that should not be routinely granted. *Id.*

Hulitt did not object to the presence of the comfort person. Instead, he requested the following jury instruction, which the trial court gave to the jury before L.S. testified:

> Indiana law does allow what we call a support person to – sit alongside a – minor witness under certain circumstances. In this case, that's exactly what's – what's going on. This person is simply there as a comfort or as a support person because of the age of the witness. This is not unique to this case. I should also tell you it's – something that is allowed by law.

(Tr. at 59.) Because the court's instruction explained the presence of the comfort person, and as we presume proper instruction of the jury can cure prejudice, we decline to find inherent prejudice from the mere fact that L.S.'s aunt was sitting near her. *See Stanger*, 545 N.E.2d at 1114 (the mere presence of a support person in the courtroom is not, in itself, inherently prejudicial).

Hulitt argues he suffered actual prejudice because the comfort person displayed

6

emotion during L.S.'s testimony, and thus the trial court abused its discretion when it denied his motion for mistrial. In his brief, Hulitt cites no authority to support his contention he was prejudiced by the comfort person's display of emotion and offers no case law supporting his contention he was denied a fair trial when the trial court denied his request for mistrial. He states in his brief:

> The comfort person's actions were clearly distracting and drew the attention of the jury. Furthermore, the comfort person's actions were sure to arouse intense feelings among the jurors for the witness or against the defendant. In addition, the comfort person's actions clearly emphasized the testimony of the victim which Indiana law forbids.

(Br. of Appellant at 10.) We disagree.

The court instructed the jury prior to L.S.'s testimony that the practice of having a comfort person present during a child victim's testimony was not unique to Hulitt's trial and was "because of the age of the witness." (Tr. at 59.) L.S. was also displaying emotion and there is nothing in the record to suggest the comfort person displayed any further emotion. Therefore, we hold Hulitt has not demonstrated actual prejudice, and the trial court did not abuse its discretion when it denied his motion for mistrial. *See Lucio v. State*, 907 N.E.2d 1008, 1011 (Ind. 2009) (Lucio was not denied a fair trial when the trial court denied his motion for mistrial because the witness' allegedly prejudicial statement was fleeting and happened once, the trial court instructed the jury regarding the statement, and the State did not call attention to the statement later in the trial or during closing arguments).

2.    Denial of Motion to Correct Error

"When ruling on a Motion to Correct Errors, the trial court sits as the initial fact finder

7

on the issues raised, and we review the trial court's determination for an abuse of discretion." *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002). An abuse of discretion occurs if the decision was "against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *James v. State*, 872 N.E.2d 669, 671 (Ind. Ct. App. 2007). Hulitt's motion to correct error was based on a juror allegedly contacting a person who was in the audience during Hulitt's trial to discuss the evidence presented before the jury came to a verdict.

Juror misconduct involving out-of-court communication with an unauthorized person creates a rebuttable presumption of prejudice. *Griffin v. State*, 754 N.E.2d 899, 901 (Ind. 2001), *affirmed on reh'g* 763 N.E.2d 450 (Ind. 2002). "Such misconduct must be based on proof, by a preponderance of the evidence, that an extra-judicial contact or communication occurred, and that it pertained to a matter before the jury." *May v. State*, 716 N.E.2d 419, 421 (Ind. 1999). Once the defendant proves an extra-judicial communication pertaining to a matter before the jury occurred, "the presumption [of prejudice] arises and the burden shifts to the State for rebuttal." *Butler v. State*, 622 N.E.2d 1035, 1040 (Ind. Ct. App. 1993), *reh'g denied*. Thus, a defendant seeking a new trial because of juror misconduct generally must show the misconduct (1) was gross and (2) probably harmed him. *Griffin*, 754 N.E.2d at 901. We review the trial judge's determination on these points only for abuse of discretion, and the burden is on the appellant to show the misconduct meets the prerequisites for a new trial. *Id*. In satisfying this burden, evidence of juror statements indicating how extrinsic information affected the jury's decision-making process is inadmissible and will not be

8

considered. *Id*. at 903; Indiana Evidence Rule 606(b).

Hulitt presented evidence that a juror, Alrita Cook, contacted a member of the audience of his trial, Camelia Vanzant, and the two, in violation of the trial court's instructions not to do so, discussed the evidence and the credibility of the witnesses. Vanzant testified the two discussed what evidence was required to prove penetration occurred, how L.S. could have contracted chlamydia if not from Hulitt, whether L.S.'s testimony was coached, and whether Vanzant would trust Hulitt with Vanzant's children.

The trial court determined Cook's actions were not gross misconduct, and we disagree. Cook contacted Vanzant and had a lengthy discussion regarding the evidence in violation of the court's instruction not to do so, and such behavior clearly constitutes gross misconduct. However, the majority of the extra-judicial conversation involved information probative of Hulitt's innocence. Vanzant was a friend of Hulitt's family, even riding with him to the courthouse during his trial, and she told Cook that she trusted Hulitt with her own children, a statement that seems to favor Hulitt.

However, Vanzant and Cook did discuss a possibly prejudicial issue - the matter by which L.S. contracted chlamydia, but they did so only generally. Vanzant testified Cook stated, "since the victim had an STD . . . [it] seemed that -- she had to get it some kind of way and that it just didn't seem like something was right with the whole case." (MCE Tr. at 22.) Vanzant then testified she agreed with Cook, stating, "A STD, if it's positive, it's positive, if . . . the victim had an STD, then . . . she had to have gotten it from somewhere." (*Id*.) "[A STD] does not come from sitting on a toilet seat or, you know, just passed from shaking

9

someone's hand." (*Id*. at 35.) In *Griffin*, our Indiana Supreme Court declined to hold juror misconduct occurred when an alternate juror discussed with other jurors whether Griffin was guilty based on the reliability of the victim's identification of Griffin from a photo array. In so holding, the Court explained the alternate "did not add any fresh perspective to the discussion; the other jurors were well aware that the State's case relied on a strong eyewitness identification." *Griffin*, 754 N.E.2d at 903. The Court went on to note the prosecutor "emphasized this point in her closing arguments." *Id*. at 903 n.7.

The same is true in the instant case. Vanzant's extra-judicial commentary did not add a "fresh perspective" to the jury's deliberation. The jury was aware of the State's trial strategy to link Hulitt to the crime by virtue of the fact he, like L.S., also tested positive for chlamydia, and the possible sources of L.S.'s chlamydia were the focus of testimony from two expert witnesses, and the subject of several questions presented to those experts from members of the jury. Additionally, like in *Griffin*, the prosecutor emphasized two theories of how L.S. contracted chlamydia from Hulitt. Finally, Vanzant's comments regarding the origin of L.S.'s chlamydia were made in agreement with Cook's already expressed opinion regarding the matter, and Vanzant testified she never told Cook how to vote on the jury, nor did Vanzant say Cook told her the information the women discussed affected her decision in any way.

Even though the extra-judicial conversation between Cook and Vanzant in violation of the trial court's instruction not to have such communication was gross misconduct, Hulitt has not demonstrated probable harm from the comments contained therein. Thus, the trial court

10

did not abuse its discretion when it denied Hulitt's motion to correct error because the State

rebutted the presumption of prejudice stemming from the juror's misconduct. *See Griffin*,

754 N.E.2d at 901 (juror misconduct does not warrant reversal if State rebuts presumption of

prejudice stemming from unauthorized out-of-court communication).

      3.      Sexually Transmitted Disease as an Aggravating Factor

The United States Supreme Court, in *Blakely v. Washington*, held, "Other than the fact

of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt."

542 U.S. 296, 301 (2004). In response to the *Blakely* decision, our Indiana legislature

enacted a new sentencing structure with lower and upper sentencing limits and with an

advisory sentence:

> Indiana's new sentencing statutes apparently were enacted to resolve the Sixth
> Amendment problem *Blakely* presented. By eliminating fixed terms, the
> Legislature created a regime in which there is no longer a maximum sentence a
> judge "may impose without any additional findings." *Blakely*, 542 U.S. at 304,
> 124 S.Ct. 2531 (emphasis omitted). And this is so because for *Blakely*
> purposes the maximum sentence is now the upper statutory limit. As a result,
> even with judicial findings of aggravating circumstances, it is now impossible
> to "increase [ ] the penalty for a crime beyond the prescribed statutory
> maximum." *Blakely*, 542 U.S. at 301, 124 S.Ct. 2531 (quoting *Apprendi* [*v.*
> *New Jersey*], 530 U.S. [466] at 490, 120 S.Ct. 2348).

*Anglemyer v. State*, 868 N.E.2d 482, 489 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind.

2007). Thus, it is impossible to increase the penalty for a crime beyond the prescribed

statutory maximum. *Id.* While trial courts are still required to issue sentencing statements

identifying aggravating and mitigating circumstances, there is no requirement that those

11

circumstances be brought before a jury and proven beyond a reasonable doubt. *Id*. at 490. Nevertheless, facts used to aggravate or mitigate a sentence still must have support in the record. *Id*.

The trial court found as an aggravating circumstances that Hulitt violated a position of trust with the victim and that "[a]s a result of defendant's actions, the victim contracted a sexually transmitted disease." (App. at 158.) Hulitt does not challenge the finding he violated a position of trust, only that the trial court found L.S. contracted a sexually transmitted disease from him. The State presented evidence L.S. contracted chlamydia after Hulitt molested her, and that Hulitt tested positive for chlamydia. Thus, there is evidence in the record to support the trial court's finding and there was no error in including the factor as an aggravating circumstance. *See Anglemyer*, 868 N.E.2d at 490 (aggravating circumstance not error if supported by evidence).

**CONCLUSION**

The trial court did not abuse its discretion when it allowed L.S. to testify in the presence of her aunt or when it denied Hulitt's request for mistrial based on the aunt's display of emotion, because the decisions did not result in an unfair trial. Nor did the trial court abuse its discretion when it denied Hulitt's motion to correct error because the State rebutted the presumption of prejudice stemming from juror misconduct. Finally, the trial court did not err when it found as an aggravating circumstance that Hulitt gave L.S. a sexually transmitted disease, as there was evidence to support the trial court's finding. Accordingly, we affirm.

12

Affirmed.

BAILEY, J., and BRADFORD, J., concur.