**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1307-CR-590 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1202-FA-7646

**January 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Michael Johnson ("Johnson") was convicted after a jury trial of seven counts of Child Molesting, as Class A felonies;[1] and three counts of Child Molesting, as Class C felonies.[2] The trial court also found Johnson to be a Habitual Offender.[3] He now appeals.

We affirm.

**Issues**

Johnson raises two issues for our review. We restate these as:

I. Whether the trial court abused its discretion when it denied Johnson's motion for a new trial after an alternate juror participated in jury deliberations; and

II. Whether there was sufficient evidence of venue to sustain one of Johnson's convictions for Child Molesting, as a Class A felony.

**Facts and Procedural History**

In 2001, Johnson married C.J. C.J. had a daughter from a previous relationship, D.J. At some point in the marriage, Johnson, C.J., D.J., and others of C.J.'s children were living in a house on Fletcher Avenue in Indianapolis. While they were living at this home, D.J. was around five or six years old. During this time, C.J. relied upon Johnson to help with childcare. On multiple occasions, Johnson caused D.J. to perform oral sex upon him, performed oral sex upon D.J., and rubbed his penis between D.J.'s buttocks.

---

[1] Ind. Code § 35-42-4-3(a)(1).

[2] I.C. § 35-42-4-3(b).

[3] I.C. § 35-50-2-8.

Later, when D.J. was six or seven years old, the family moved to a different residence, also in Indianapolis. While they were living in this home, Johnson on multiple occasions had D.J. perform oral sex upon him. One such incident occurred in Johnson's truck, while he was driving on an interstate.

When D.J. was seven or eight years old, the family moved to a house on Webster Street, again in Indianapolis. During this time, Johnson continued to cause D.J. to perform oral sex upon him, both at the house and on one occasion at a U-Haul self-storage facility. In 2005, C.J. sought a divorce from Johnson, after which Johnson no longer lived with the family.

By 2011, Johnson was in a relationship with K.R., who had a daughter, A.R., from a previous relationship. On one occasion, when A.R. was seven or eight years old, A.R. was watching a movie in K.R.'s room, and Johnson was lying in bed. Johnson was undressed, got up out of the bed, and laid A.R. on top of him; A.R. ran to her room. On another occasion, when A.R. was eight years old, Johnson and A.R. were in K.R.'s room; Johnson removed his clothes and laid down on top of A.R., and touched the area of A.R.'s genitals with his penis. On several other occasions, Johnson made A.R. rub his penis with her hands or perform oral sex upon him.

In January 2012, C.J. learned of rumors concerning Johnson's treatment of A.R. C.J. asked D.J. if she knew of anything happening between Johnson and D.J.'s younger sisters. D.J. began to cry and told C.J. that Johnson had abused her. Based upon this, C.J. contacted the Department of Child Services ("DCS").

3

DCS began an investigation on January 6, 2012, and interviewed A.R., D.J., and several of D.J.'s siblings. Police and DCS traveled to K.R.'s residence, where A.R. and Johnson were located that day. After DCS obtained custody of A.R., police officers arrested Johnson on unrelated charges.

On February 2, 2012, Johnson was charged with nine counts of Child Molesting, as Class A felonies; seven counts pertained to Johnson's alleged conduct with D.J., and two involved alleged conduct with A.R. Johnson was also charged with three counts of Child Molesting, as Class C felonies; all three of these related to Johnson's alleged conduct with A.R.

A jury trial was conducted on April 22 and 23, 2013. At the conclusion of the trial, the jury found Johnson guilty of seven of nine counts of Child Molesting, as Class A felonies, and of all counts of Child Molesting, as Class C felonies. The jury found Johnson not guilty of two counts of Child Molesting, as Class A felonies; one pertained to conduct alleged as to D.J., and one as to A.R. After announcing the verdict, the trial court polled the jury, during which four jurors indicated that one of the alternate jurors participated in deliberations.

As a result, Johnson moved for declaration of a mistrial, which the State opposed. The trial court and counsel for both the State and Johnson examined each of the jurors and the two alternates to determine the nature of the alternate jurors' participation in deliberations. After examining each of the jurors, the trial court took both the jury verdicts and the motion for mistrial under advisement.

4

On May 23, 2013, after the State and Johnson argued and submitted briefing concerning the motion, the trial court denied Johnson's motion for a mistrial.

On June 12, 2013, the trial court conducted a bench trial concerning the State's allegation that Johnson was a habitual offender, and entered its finding that Johnson was a habitual offender. On the same day, the trial court conducted a sentencing hearing. At the conclusion of the hearing, the court sentenced Johnson to twenty years imprisonment for each of the seven Class A felony counts (Counts I through VII), and four years imprisonment for each of the three Class C felony counts (Counts X through XII), with Count XII enhanced by twelve years due to Johnson's habitual offender status. The trial court ran the sentences for Counts I and II concurrent to one another; Counts III, IV, and V concurrent to one another; and Counts VI and VII concurrent to one another; each set of these counts was run consecutively. Count X was run consecutively to Counts VI and VII; Counts XI and XII were run concurrent to one another, but consecutive to Count X. This yielded an aggregate term of imprisonment of eighty years.

This appeal ensued.

**Discussion and Decision**

Alternate Juror Participation

We turn first to Johnson's contention on appeal that the trial court abused its discretion when it did not declare a mistrial after an alternate juror participated in the jury's deliberations.

Our supreme court has concluded that where, as here, a juror participates in deliberations, that conduct amounts to an outside influence upon the jury. Griffin v. State, 754 N.E.2d 899, 901 (Ind. 2001). "Juror misconduct involving an out-of-court communication with an unauthorized person creates a rebuttable presumption of prejudice." Id. For such a presumption to arise, it must be proved by a preponderance of the evidence that the communication occurred and that it pertained to a matter pending before the jury. Palilonis v. State, 970 N.E.2d 713, 724 (Ind. Ct. App. 2012), trans. denied. Once the defendant has proved this, the burden shifts to the State to rebut the presumption. Id.

Thus, "[a] defendant seeking a new trial because of juror misconduct must show that the misconduct (1) was gross and (2) probably harmed the defendant." Griffin, 754 N.E.2d at 901. Thus, a verdict is not subject to impeachment unless "a substantial probability existed that the verdict was prejudiced by the improper material." Palilonis, 970 N.E.2d at 724 (citations and quotations omitted). We review a trial court's ruling on a motion for a new trial due to juror misconduct for an abuse of discretion, and the appellant must bear the burden of showing that the misconduct complained of meets the requirements for a new trial. Griffin, 754 N.E.2d at 901.

In Griffin, our supreme court considered a situation similar to that which confronts us today. In that case, the jury sent a note to the trial court indicating that, after 2 ½ hours of deliberation, it could not reach a verdict; the trial court told the jury to continue its deliberations. Id. at 903. At some point, a juror asked one of the alternate jurors to express her opinion as to Griffin's guilt; the alternate stated that she believed Griffin was guilty based

6

upon the eyewitness's testimony, the reliability of which for the alternate juror was bolstered by the amount of time the identifying witness conversed with the defendant. Id. One juror testified that the alternate's statement "'affected'" her decision, but the Griffin Court held that this was not properly subject to consideration. Id. Rather, the Griffin Court looked to whether the alternate's statement added "fresh perspective" to the discussion, and was skeptical that "if eleven other jurors favored conviction, the twelfth only acceded because the alternate also favored conviction when the majority solicited one more view." Id.

Here, when the jury was polled, the trial court and the parties learned that one of the alternate jurors participated in the jury's deliberations, despite the trial court's instructions to the contrary. The trial court and the parties examined all twelve jurors and the two alternates. One of the alternates was determined not to have participated in deliberations at all.

The other alternate, Juror Sormalis, participated briefly in deliberations. During their deliberations, the jury sent a note to the trial court seeking clarification of the timeline of certain events to which D.J. and C.J. testified. The trial court did not answer the jurors' question. After this, Juror Sormalis, speaking with several jurors, attempted to clarify the charging information's allegations and the sequence of events related to the allegations against Johnson concerning D.J. during a one-year period of time. One juror testified that Juror Sormalis may have expressed an opinion as to Johnson's guilt on one or two charges, but that juror was unsure whether that was the case. Several jurors testified that they did not hear what Juror Sormalis said concerning the charging information and the timeline of events. One juror testified that the jurors relied upon the testimony of the witnesses to reach

7

a verdict, and another juror testified that the jury seemed to have reached its conclusions independently of anything Juror Sormalis said.[4] And in any case, the precise order of events in a single-year timeline was not material to the charged offenses, which spanned several years of time each. See Baber v. State, 870 N.E.2d 486, 492 (Ind. Ct. App. 2007) (noting that time is not of the essence in child molesting cases, and quoting Barger v. State, 587 N.E.2d 1304, 1307 (Ind. 1992)), trans. denied.

As in Griffin, then, we cannot conclude that Juror Sormalis's brief interjection into the flow of the jury's deliberations had any significant effect upon the verdicts—let alone that Johnson faced the kind of substantial prejudice required to impeach a jury verdict. We accordingly find no abuse of discretion in the trial court's denial of the motion for a mistrial.

### Sufficiency of Evidence as to Venue

Johnson also challenges the sufficiency of the evidence as to venue associated with Count V, Child Molesting, as a Class A felony.

A defendant has a constitutional and statutory right to be tried in the county in which an offense was committed. Baugh v. State, 801 N.E.2d 629, 631 (Ind. 2004) (citing, inter alia, Ind. Const. Art. I, § 13; I.C. § 35-32-2-1(a) (2000)). However, venue is not an element of the offense. Id. The State must prove venue; however, venue may be established by a preponderance of the evidence and need not be proven beyond a reasonable doubt. Id.

---

[4] The State asked each juror whether Juror Sormalis's statements had any effect on that juror's decision. We note that our supreme court has held that the effect of an alternate's opinion upon a juror's decision is not properly considered by the trial court when ruling upon a motion for mistrial in a case like the one presently at bar. Griffin, 754 N.E.2d at 902-03.

8

Here, Johnson contends that there was insufficient evidence that he committed the offense of Child Molesting upon D.J. in Marion County, as alleged in Count V, because the evidence adduced at trial indicates that Johnson committed the offense while in a moving vehicle and there was no testimony from D.J. as to where the vehicle was at the time of the offense. Indiana Code section 35-52-2-1 provides, "Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law." I.C. § 35-32-2-1(a). Among the exceptions is, "If an offense is committed in Indiana and it cannot readily be determined in which county the offense was committed, trial may be in any county in which an act was committed in furtherance of the offense." I.C. § 35-32-2-1(d). Further, offenses committed on or near a shared boundary between two or more counties may be tried in any county sharing the common boundary. I.C. § 35-32-2-1(h). Where an offense is committed on a public highway that runs on and along a common boundary shared by two or more counties, that offense may be tried in any county sharing the common boundary. I.C. § 35-32-2-1(i). And "[a]lthough the right to be tried in the county in which the offense occurred is grounded in the Indiana Constitution, the constitution does not contemplate exonerating criminals simply because the nature of the crime itself makes venue unknowable." Cutter v. State, 725 N.E.2d 401, 409 (Ind. 2000).

Here, Johnson's victim was a then-seven- or eight-year-old D.J., whom he placed in a car that left from the victim's home in Indianapolis. At some point during the drive between the home and an ultimate destination—a construction site—Johnson caused D.J. to engage in oral sex.

9

We have encountered an analogous situation in Weiss v. State, 735 N.E.2d 1194 (Ind. Ct. App. 2000), trans. denied. Weiss was charged with attempted murder and rape. Id. at 1196. The facts supporting the allegations were that Weiss took his victim, T.G., from Indianapolis to the Morgan-Monroe State Forest, parts of which were in both Morgan and Monroe Counties. Id. Weiss stopped his car in Morgan County, and he and T.G. proceeded on foot. Id. at 1197. But T.G. did not know how far from the car she and Weiss had ventured or in which direction, had never been to the Morgan-Monroe State Forest, and had sustained serious-enough injuries that it was reasonable for her not to have any further insight. Id. Upon interlocutory appeal from the trial court's denial of Weiss's motion to transfer venue, which challenged venue in Morgan County, we affirmed the trial court's denial. Id.

Here, D.J. was young and the jury could, from its experience, properly infer that D.J. did not know where she and Johnson were at the time of the offense. The jury could also properly infer that several years after Johnson's commission of the offense, when D.J. was around seven years old, a fifteen year-old D.J. at the time of trial would not readily know where the offense occurred. However, Johnson had access to D.J. in Marion County and set out from there with D.J. toward his destination and apparently returned to Marion County afterward, and there was no evidence that Johnson left the state with D.J. on this occasion.

Under these facts, we conclude that there was sufficient evidence to establish Marion County as a proper venue for Count V, Child Molesting, as a Class A felony.

10

**Conclusion**

The trial court did not abuse its discretion when it denied Johnson's motion for mistrial due to the participation of an alternate juror in jury deliberations. There was sufficient evidence to sustain venue for Johnson's trial in Marion County.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.