**Michael P. KELLEY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 48S04–9006–CR–385.**

Supreme Court of Indiana.

June 7, 1990.

John M. Eisele, Schuyler, Eisele & Lockwood, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant-appellant Michael P. Kelley was convicted of theft, a Class D felony. The Court of Appeals affirmed the conviction in a non-published memorandum decision. 546 N.E.2d 1297 (Table).

The issue presented in this direct appeal is whether the trial court erred when it denied the defendant's motion for a mistrial following a recess in which jurors sat with the prosecuting witness during lunch.

The criminal charge was filed against the defendant after a retail store security guard observed Kelley leave the store. Believing he left without paying for merchandise, the security guard detained Kelley and returned him to the store security office. Kelley admitted leaving without making payment, but claimed he had forgotten the merchandise was in his possession when he walked outside the store to attend to several small children.

At trial before a six-person jury, the security guard was the sole witness for the prosecution. After his testimony, the State rested. The trial court ordered a lunch recess and admonished the jurors not to discuss the case with anyone. Three of the six jurors, however, ate lunch with the witness security guard.

When trial reconvened, the defendant immediately moved for a mistrial. The trial judge conducted a thorough hearing, in which testimony showed the security guard had been heard to say to the three jurors, "I seen him do it," and one of the jurors had been heard to say, "I could see him do that." It was unknown whether these comments referred to the facts at issue in the trial. The security guard and the three jurors admitted having lunch together, but denied discussing the trial proceedings. Upon questioning, the jurors said the encounter would not influence their ability to render an impartial verdict, and, asked whether they had formed an opinion regarding the security guard's credibility, the jurors responded in the negative. The trial judge denied the mistrial motion.

The crucial fact in dispute in the one-day trial was whether Kelley intended to steal the merchandise when he left the store with it. The evaluation of the security guard's credibility was therefore the most important component of the jury's fact-finding process. The defendant contends that the fairness of this process was prejudicially compromised when the State's only witness socialized with 50% of the jury (one of whom became jury foreman) during the 55-minute lunch break of the one-day trial.

A trial court has discretion in determining whether to grant a mistrial, and this decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. *Gregory v. State* (1989), Ind., 540 N.E.2d 585, 589. To succeed on appeal from the denial of a motion for mistrial, the defendant must demonstrate the conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Id.* While a rebuttable presumption of prejudice arises from juror misconduct involving out-of-court communications with unauthorized persons, such misconduct must be based on proof, by a preponderance of the evidence, that an extra-judicial contact or communication occurred and that it pertained to a matter pending before the jury. *Currin v. State* (1986), Ind., 497 N.E.2d 1045, 1046. Where there is a factual conflict regarding the existence or content of extra-judicial juror contact, it is within the discretion of the trial court to determine whether the evidence presented showed any irregularity. *Id.* The defendant has the burden of showing no action other than a mistrial could have remedied the perilous situation in which he was placed. *Gregory*, 540 N.E.2d at 589.

This court reversed the defendant's conviction and ordered a new trial in *Woods v. State* (1954), 233 Ind. 320, 119 N.E.2d 558, because police officers who were witnesses for the State visited with members of the jury in the jury room during recesses and intermissions. Although

there was no evidence that any conversations took place concerning the trial, we found the conduct of witnesses in visiting with the jury was prima facie prejudicial to the defendant. *Id.* at 323–24, 119 N.E.2d at 560–61. We stated:

> If the appellant during intermissions had been permitted to go in the jury room and visit and fraternize with members of the jury, the State could properly have moved to declare a mistrial. The jury should determine the credibility of witnesses and the weight to be given their testimony from the evidence given upon the trial, and it would be all too easy for the jury *unconsciously* to be influenced as to these matters by a friendly association with the witnesses for the State.

*Id.* at 323, 119 N.E.2d at 560 (emphasis added).

Similarly, in *Turner v. Louisiana* (1965), 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, the United States Supreme Court reversed the defendant's conviction, finding extreme prejudice inherent in the conduct of two police witnesses who had continual association with the jurors during the three-day trial—eating with, conversing with and performing errands for the jurors. The Court said:

> [T]he credibility which the jury attached to the testimony of these two key witnesses must inevitably have determined whether Wayne Turner was to be sent to his death. To be sure, their credibility was assailed by Turner's counsel through cross-examination in open court. But the potentialities of what went on outside the courtroom during the three days of the trial may well have made these courtroom proceedings little more than a hollow formality.

*Id.* at 473, 85 S.Ct. at 550, 13 L.Ed.2d at 429.

We find this case to be controlled by *Woods.* Despite the lack of clear evidence that the security guard and the jurors discussed the trial proceedings and despite the three jurors' assertions that their impartiality was intact, the enhancement of the credibility of the prosecution's witness seems highly probable, regardless of whether the jurors themselves realized it at the time. As stated in Judge Miller's dissent to the Court of Appeals decision in the present case:

> [A]s it pertains to the issue of witness credibility, the prejudice which results from a juror's association with the prosecutorial witness can be an invisible prejudice (or bias) which festers within the subconscious mind of the fact finder. The taint caused by an improprietous association may be impossible to remove.
>
> [T]he complained of conduct in the present case was of such a prejudicial and inflammatory nature—based on the probable persuasive effect of the conduct *on the jury's ability to assess witness credibility*—as to place Kelley in a position of grave peril to which he should not have been subjected and ... no action other than a mistrial could have remedied the perilous situation into which he was placed.

(slip opinion, dissenting opinion at 4–5) (emphasis in original).

We agree. The trial judge abused his discretion in denying the defendant's motion for a mistrial. We therefore grant transfer, vacate the decision of the Court of Appeals, reverse the trial court and remand for a new trial.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.