ATTORNEY FOR APPELLANT
Marce Gonzalez, Jr.
Dyer, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

_____

## In the
## Indiana Supreme Court

_____

**FILED**

Apr 29 2014, 2:12 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 45S05-1305-CR-331

ERNESTO ROBERTO RAMIREZ,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

_____

Appeal from the Lake Superior Court, No. 45G04-1101-MR-00003
The Honorable Thomas P. Stefaniak, Jr., Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 45A05-1204-CR-224

_____

**April 29, 2014**

**Rush, Justice.**

Every accused has a constitutionally protected right to an impartial jury. We have long recognized that even one juror's unauthorized contacts and communications may poison the entire jury, but we rely upon trial courts to decide whether a mistrial is the cure. Unfortunately, we have given trial courts inconsistent guidance on both how to make this determination and whether the accused must prove prejudice. Today we clarify our precedent: Defendants are entitled to a rebuttable presumption of prejudice when they can show by a preponderance of the evidence that

an unauthorized, extra-judicial contact or communication with jurors occurred, and that the contact or communication pertained to the matter before the jury.

In this case, though, Ernesto Ramirez failed to prove that a juror's extraneous contact and communications related to his case. As a result, he was not entitled to a presumption of prejudice, and the trial court properly denied his motion for mistrial. We also summarily affirm Ramirez's sentence.

**Background and Procedural History**

Five days into Ramirez's trial for murder and criminal gang activity, Juror 282 wrote a note to the trial court about an incident at her home the night before: "I was out to eat and my neighbor called me and said that the neighbor below me heard gunshots upstairs and running around and told them I was a jury member in a case." She also told the other jurors of this incident. The trial court excused Juror 282 from the jury after she said that she could not render an impartial verdict. Ramirez moved for a mistrial, arguing that Juror 282's disclosure of the incident to the other jurors "taint[ed] the whole jury" and prevented a "fair trial." After interviewing all the jurors outside the presence of the jury with counsel present, the trial court denied Ramirez's motion, finding that Juror 282's incident was coincidental and the jury could remain impartial.

The jury found Ramirez guilty of murder and criminal gang activity, but in a second phase acquitted him of a criminal gang enhancement. The trial court sentenced him to sixty-two years for murder and two years for criminal gang activity, served consecutively. Ramirez appealed, arguing that the trial court erred in refusing to grant a mistrial and that his sixty-two year murder sentence was inappropriate. We will discuss additional facts as needed.

**Standard of Review**

A trial court is in the best position to evaluate whether a mistrial is warranted because it can assess first-hand all relevant facts and circumstances and their impact on the jury. See Kelley v. State, 555 N.E.2d 140, 141 (Ind. 1990). We therefore review denial of a motion for mistrial only for abuse of discretion. Gregory v. State, 540 N.E.2d 585, 589 (Ind. 1989). However, the correct legal standard for a mistrial is a pure question of law, which we review de novo. See Hartman v. State, 988 N.E.2d 785, 788 (Ind. 2013).

**Discussion and Decision**

Ramirez argues the trial court failed to presume prejudice from the alleged jury taint under Remmer v. United States, 347 U.S. 227 (1957), applied the wrong mistrial standard under Indiana precedent, and improperly relied upon juror testimony in refusing to grant a mistrial. The Court of Appeals' memorandum decision correctly held that the trial court properly denied a mistrial. But in reaching that conclusion, the Court of Appeals cited three different mistrial standards and stated, "regardless of which standard is applied, Ramirez is not entitled to a new trial." Ramirez v. State, No. 45A05-1204-CR-224, slip op. at 7, 984 N.E.2d 258 (Ind. Ct. App. February 19, 2013). We took the Court of Appeals' approach as an indication that our precedent on suspected jury taint has been inconsistent, and we granted transfer to clarify. 987 N.E.2d 521 (Ind. 2013).

Federal and Indiana precedent has narrowed the presumption of prejudice to apply in cases where defendants show more than just *potential* taint—but some Indiana precedent, including our own, has applied that presumption inconsistently. We now clarify its precise scope, and reiterate the proper process for trial courts to address jury taint in the courtroom. We hold that no presumption applies in Ramirez's case, and that the trial court's approach in addressing his allegation of jury taint was correct. On all other issues, we summarily affirm the Court of Appeals. Ind. Appellate Rule 58(A)(2).

## I.    Historical Development of the Presumption of Prejudice in Jury Taint Cases.

An impartial jury is the cornerstone of a fair trial, guaranteed by the Sixth Amendment and Article 1, Section 13 of our Indiana Constitution. See Turner v. State of Louisiana, 379 U.S. 466, 472 (1965); Caruthers v. State, 926 N.E.2d 1016, 1020 (Ind. 2010). To preserve impartiality and prevent taint, we prohibit unauthorized contacts and communications with jurors. Yet no trial is perfect, and we have long held that "[w]hile courts have a duty to ensure an impartial jury . . . jurors need not be absolutely insulated from all extraneous influences . . . ." Id. at 1021 (quoting Lindsey v. State, 260 Ind. 351, 356, 295 N.E.2d 819, 823 (1973)). We therefore entrust trial courts with the difficult responsibility of discerning when extraneous influences become irreparable taint warranting a new trial. See id.

Federal precedent for making that determination has narrowed over time. The United States Supreme Court once held that "[i]n a criminal case, any private communication, contact, or

3

tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . ." Remmer, 347 U.S. at 229. That presumption was "not conclusive, but the burden rest[ed] heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." Id. Remmer applied this rule to find presumptive prejudice when a defendant discovered that someone had offered to bribe one of his jurors in return for a guilty verdict. Id. at 228. But since Remmer was decided in 1954, the scope of the presumption has narrowed considerably. In Smith v. Phillips, the Court held that a defendant had the burden of proving prejudice, suggesting the presumption was either extremely narrow or nonexistent. 455 U.S. 209, 215 (1982). The Court later clarified "[t]here may be cases where an intrusion should be presumed prejudicial," United States v. Olano, 507 U.S. 725, 739 (1993), but it has never returned to Remmer's broad presumption. The federal circuits have recognized this evolution, and most have applied a narrower presumption of prejudice than what Justice Sherman Minton articulated in Remmer.[1]

Indiana, likewise, has historically applied a presumption of prejudice narrower than Remmer's original formulation. In Currin v. State, we said that "a rebuttable presumption of pre-judice arises from juror misconduct involving out-of-court communications with unauthorized persons"—but that "such misconduct must be based on proof, by a preponderance of the evidence, that an extra-judicial contact or communication occurred, and that it pertained to a matter pending before the jury." 497 N.E.2d 1045, 1046 (Ind. 1986). We articulated the presumption of prejudice in Currin without any reference to Remmer. Currin's formulation was the synthesis of a long line of Indiana cases holding that defendants must make a preliminary showing that jury taint actually occurred before a judge would consider whether any taint had irreparably prejudiced the jury. See, e.g., Fox v. State, 457 N.E.2d 1088, 1093–94 (Ind. 1984); Brown v. State, 245 Ind. 604, 607, 201

---

[1] United States v. Mack, 729 F.3d 594, 606 (6th Cir. 2013), cert. denied, 134 S. Ct. 1338 (U.S. 2014); United States v. Dehertogh, 696 F.3d 162, 167 (1st Cir. 2012); Hall v. Zenk, 692 F.3d 793, 803–05 (7th Cir. 2012), cert. denied sub nom. Butts v. Hall, 133 S. Ct. 1805 (U.S. 2013); United States v. Farhane, 634 F.3d 127, 168–69 (2d Cir. 2011), cert. denied sub nom. Sabir v. United States, 132 S. Ct. 833 (U.S. 2011); United States v. Honken, 541 F.3d 1146, 1167 (8th Cir. 2008); United States v. Barrett, 496 F.3d 1079, 1102 (10th Cir. 2007); Brooks v. Dretke, 418 F.3d 430, 434 (5th Cir. 2005); United States v. Rutherford, 371 F.3d 634, 642–44 (9th Cir. 2004); United States v. Lloyd, 269 F.3d 228, 238 (3d Cir. 2001); United States v. Cheek, 94 F.3d 136, 141 (4th Cir. 1996); United States v. Williams-Davis, 90 F.3d 490, 496–97 (D.C. Cir. 1996). The Eleventh Circuit has yet to address the scope of the presumption of prejudice under Remmer. See Boyd v. Allen, 592 F.3d 1274, 1305 n.9 (11th Cir. 2010).

4

N.E.2d 281, 283 (1964); Barker v. State, 238 Ind. 271, 278, 150 N.E.2d 680, 684–84 (1958). Almost fifty years before Remmer was decided, Indiana courts would only entertain allegations of impermissible jury taint "when such a state of facts is shown that it may fairly be presumed therefrom that the defendant's rights were prejudiced." Trombley v. State, 167 Ind. 231, 78 N.E. 976, 977 (1906).

Alongside the presumption of prejudice analysis synthesized in Currin, Indiana courts have applied an irrebuttable presumption of prejudice aimed at identifying egregious "juror conduct *with witnesses* occurring *contemporaneous to the trial proceeding*." May v. State, 716 N.E.2d 419, 422 (Ind. 1999). We have referred to such conduct as "prima facie prejudicial." We first used that phrase to describe jury taint in Woods v. State, 233 Ind. 320, 324, 119 N.E.2d 558, 561 (1954), where three state witnesses—two police officers and the sheriff—repeatedly visited jury members in a room where the jury congregated during recesses and intermissions. Id. at 323, 119 N.E.2d at 560. Likewise, in Kelley, the jury was tainted after three jurors ate lunch with the State's sole witness, and the witness was overheard stating "I seen him do it," and one of the jurors responded, "I could see him do that." 555 N.E.2d at 141. And in May, we granted a new trial after a juror's conversation with a witness ended with an invitation for the juror to come over to the witness's house to watch a pay-per-view boxing match. 716 N.E.2d at 420.

We clarified in May that the phrase "prima facie prejudicial" used previously in Woods and Kelley referred to "extra-judicial juror conduct . . . fundamentally harmful to the appearance of the fair and impartial administration of justice . . . *irrespective of whether the communication concerned a matter pending before the jury*." 716 N.E.2d at 422 (emphasis added). All defendants needed to establish in order to show "prima facie prejudice" was conduct that compromised the appearance of jury neutrality—such as open fraternizing between jurors and witnesses. Defendants needed to show nothing about the content of such egregious interactions, only that they took place. In essence, then, Woods, Kelley, and May carved out a very narrow set of egregious circumstances in which the prejudice under Currin is not merely presumed, but automatically found; and the State will never be able to show harmless error. See May, 716 N.E.2d at 422–23; Woods, 233 Ind. at 323–24, 119 N.E.2d at 560–61.

5

In sum, Indiana courts have been applying a presumption of prejudice since long-before Remmer. The presumption as synthesized in Currin is consistent with the narrow presumption the United States Supreme Court continues to apply and is well within the range of comparable alternatives adopted by the federal circuit courts. And in rare cases, we have found the presumption of prejudice irrebuttable when the very appearance of jury neutrality is compromised.

## II.      Confusion in Our Application of the Presumption of Prejudice.

While we have clearly established the presumption of prejudice in our case law, Indiana courts have not applied it consistently. As one panel of our Court of Appeals has observed, many Indiana cases "state the presumption of prejudice as black letter law and then proceed to ignore it." Hall v. State, 796 N.E.2d 388, 395 (Ind. Ct. App. 2003), trans. denied. Often we have cited the presumption of prejudice we discussed in Currin but applied a different mistrial standard instead. For example, some cases recited a presumption of prejudice, yet held without explanation that defendants have to meet the "probable harm" standard reserved for juror misconduct cases not involving out-of-court communications with unauthorized persons—that is, that the misconduct is "gross" and "probably harmed the defendant." E.g., Griffin v. State, 754 N.E.2d 899, 901, 903 (Ind. 2001); Stokes v. State, 908 N.E.2d 295, 300 (Ind. Ct. App. 2009), trans. denied; Pagan v. State, 809 N.E.2d 915, 921 (Ind. Ct. App. 2004), trans. denied, disapproved of on other grounds. Other cases have cited the presumption but held that the defendant had to show a "substantial possibility" that the jury was improperly influenced before getting a new trial. E.g., Palilonis v. State, 970 N.E.2d 713, 724 (Ind. Ct. App. 2012), trans. denied; Butler v. State, 622 N.E.2d 1035, 1040–41 (Ind. Ct. App. 1993), trans. denied. And some cases have cited to both the presumption of prejudice and the probable harm standard for jury misconduct but have based their ultimate holdings on the "grave peril" standard in the end. See, e.g., Holden v. State, 916 N.E.2d 223, 228–29 (Ind. Ct. App. 2009).

Griffin exemplifies the approach of citing the presumption but not following it. There, jurors used the opinion of the alternate juror to break a deadlock in their deliberations. Id. at 900. Griffin was convicted after the alternate told jurors that she believed Griffin was guilty. Id. at 900–01. Once the alternate juror's input came to light, Griffin sought a new trial, id. at 900, but we upheld the jury's verdict, id. at 903. Our analysis began by referencing Currin's presumption of

6

prejudice, id. at 901 (citing Currin, 497 N.E.2d at 1046)—appropriately so, because Griffin (like Currin) involved an out-of-court communication by jurors with an unauthorized person. But without explanation, we applied the probable harm standard for juror misconduct and stated, "A defendant seeking a new trial because of juror misconduct must show that the misconduct (1) was gross and (2) probably harmed the defendant." Id. (citing Lopez v. State, 527 N.E.2d 1119 (Ind. 1988)). Subsequent courts have followed Griffin's lead by stating that the presumption of prejudice applies but applying the probable harm standard instead. See, e.g., Stokes, 908 N.E.2d at 300; Pagan, 809 N.E.2d at 921.

Hall v. State was one of these cases that took note of our approach in Griffin and went as far as concluding the presumption of prejudice no longer existed in Indiana. 796 N.E.2d at 396. In Hall, the defendant was convicted of murder. Id. at 393. After trial, Hall filed a motion to correct error, alleging juror misconduct. Id. He claimed that a juror's stepson was incarcerated with Hall, and the stepson initially believed Hall was innocent. Id. But over the course of the trial, the stepson and other inmates grew to believe Hall was guilty—an opinion the stepson shared with the juror's wife. Id. The juror then overheard his wife communicate the stepson's beliefs to another family member, and told the rest of the jury what he had overheard. Id. at 393–94. The Court of Appeals discussed how Griffin and other cases departed from the presumption of prejudice described in Currin, and said that it would have preferred to give Hall that presumption. See id. 394–96 & n.6. But it refrained from granting a new trial because "mandatory precedent clearly places the burden of proving prejudice on the defendant, [and] require[d] Hall to prove he was prejudiced by the misconduct." Id. at 396.

The Court of Appeals' initial instinct in Hall was correct—and but for Griffin and other precedent, it would have granted Hall the presumption of prejudice that he deserved. The Seventh Circuit acknowledged as much when Hall's case reached that court on habeas review. The Seventh Circuit stated, "we are confident that despite some ambiguity regarding when the Remmer presumption should apply, all reasonable interpretations of Remmer and its progeny would lead to a presumption of prejudice in favor of Hall." Hall v. Zenk, 692 F.3d 793, 805 (7th Cir. 2012), cert. denied sub nom. Butts v. Zenk, 133 S. Ct. 1805 (U.S. 2013). See also Wisehart v. Davis, 408 F.3d 321, 326–27 (7th Cir. 2005) (noting that the Indiana Supreme Court did not apply Remmer "or

any reasonable variant of it"). So today, we take this opportunity to clarify how Indiana courts should apply the presumption of prejudice that remains under Remmer and our own precedent.

### III.    Clarification of Our Precedent.

Defendants seeking a mistrial for suspected jury taint are entitled to the presumption of prejudice only after making two showings, by a preponderance of the evidence: (1) extra-judicial contact or communications between jurors and unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury. Currin, 497 N.E.2d at 1046. The burden then shifts to the State to rebut this presumption of prejudice by showing that any contact or communications were harmless. See Myers v. State, 240 Ind. 641, 646, 168 N.E.2d 220, 223 (1960); Oldham v. State, 249 Ind. 301, 305, 231 N.E.2d 791, 793 (1967). If the State does not rebut the presumption, the trial court must grant a new trial. On the other hand, if a defendant fails to make the initial two-part showing, the presumption does not apply. Instead, the trial court must apply the probable harm standard for juror misconduct, granting a new trial only if the misconduct is "gross and probably harmed" the defendant. Henri v. Curto, 908 N.E.2d 196, 202 (Ind. 2009) (internal quotation marks omitted). But in egregious cases where juror conduct fundamentally compromises the appearance of juror neutrality, trial courts should skip Currin's two-part inquiry, find irrebuttable prejudice, and immediately declare a mistrial. May, 716 N.E.2d at 422–23; Kelley, 555 N.E.2d at 142; Woods, 233 Ind. at 323–24, 119 N.E.2d at 560–61. At all times, trial courts have discretion to decide whether a defendant has satisfied the initial two-part showing necessary to obtain the presumption of prejudice or a finding of irrebuttable prejudice. See May, 716 N.E.2d at 421–22.

Trial courts should apply the presumption of prejudice analysis of Currin in the context of the procedures we established in Lindsey, 260 Ind. at 358–59, 295 N.E.2d at 823–24. Joyner v. State, 736 N.E.2d 232, 239 (Ind. 2000) (recognizing that the Lindsey procedures apply to cases of extra-judicial jury communications).[2] Trial courts must immediately investigate suspected jury taint by thoroughly interviewing jurors collectively and individually, if necessary.

---

[2] Remmer's presumption of prejudice was applied in tandem with a "notice to and hearing of the defendant" to determine if juror contacts with unauthorized persons are harmless, 347 U.S. at 229—hearings now familiarly known as Remmer hearings. See U.S. v. Martin, 692 F.3d 760, 764–65 (7th Cir. 2012) (discussing "Remmer hearings"). The procedures prescribed in Lindsey are our Indiana state analogue to these hearings and operate as the procedural context in which courts should determine if the presumption of prejudice applies.

> If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of "no exposure." If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial.

Lindsey, 260 Ind. at 359, 295 N.E.2d at 824. Once defendants move for mistrial, the trial courts should assess whether or not there is enough evidence to meet the two-part showing under Currin. If so, then the presumption of prejudice applies and the burden shifts to the State to prove harmless error. If not, then trial courts should determine whether a juror's misconduct was gross or probably harmed the defendant.

## IV.     Ramirez Is Not Entitled to a New Trial.

Having clarified when the presumption of prejudice applies, we hold Ramirez is not entitled the presumption because he failed to show that Juror 282's apartment incident was related to his case. Currin, 497 N.E.2d at 1046. Juror 282 herself was not sure if her status as a juror triggered the apartment incident. But more importantly, her own narration strongly suggests that no one even entered her apartment. Upon returning home, Juror 282 reported that it seemed as if no one had tampered with her door locks or moved anything around in her apartment. Though one juror indicated that Juror 282 said a police officer she had called advised her to try to get off the jury, no other jurors corroborated that claim, nor did Juror 282 herself mention it in her own interview with the trial court outside the presence of the jury. Juror 282's disclosure of her experience to the rest of the jury, likewise, is not an extra-judicial communication that warrants a presumption of prejudice because most believed it was "coincidence" or "dumb luck"—and only three jurors thought it might have been something more. This evidence may have permitted the trial court to find by a preponderance that Juror 282's experience was related to this case. But the evidence was also inconclusive enough that the court was within its discretion to reach the opposite conclusion—that Juror 282's disclosure to her fellow jurors was nothing more than a concerned individual sharing a frightening, but unrelated, personal experience with her peers. See Caruthers, 926 N.E.2d at 1022 ("we cannot infer prejudice where none is shown and no relationship between a juror and a party existed").

9

Because the trial court was within its discretion to find that Juror 282's contacts and communications with her neighbor did not relate to the matter before the jury, Ramirez is left with a claim of simple juror misconduct. The trial court therefore should have analyzed whether Juror 282's conduct was gross misconduct and probably harmed the defendant, see Henri, 908 N.E.2d at 202, but applied the grave peril standard instead. Regardless, denying Ramirez's motion for mistrial was proper even under the probable harm standard. It is not gross misconduct for a juror to discuss a possible apartment break-in with her neighbor. It may have been misconduct to discuss the incident with the other jurors. But even if it was, the trial court remedied any possible harm by interviewing and excusing Juror 282, and then individually interviewing all remaining jurors outside the presence of the jury with counsel present to assess their ability to remain impartial. See Lindsey, 260 Ind. at 358–59, 295 N.E.2d at 823–24. All jurors stated they could render a fair verdict, and Ramirez has given us no reason to doubt their assurances.

Ramirez argues we should ignore these assurances because Kelley prohibits trial courts from relying on jurors' own statements of impartiality. We are not persuaded. Nowhere in Kelley did we preclude trial courts from relying on jurors' assurances of impartiality. See also Phillips, 455 U.S. at 217 n.7 (stating that a juror's own testimony is not inherently suspect). Rather, we assumed that the defendant was prejudiced in Kelley because the interactions of the jurors and the witness were so intimate. 555 N.E.2d at 142. As noted above, Kelley carved out a set of egregious circumstances in which a juror's actions are "prima facie prejudicial"—that is, the presumption of prejudice is irrebuttable. May, 716 N.E.2d 422–23; Woods, 233 Ind. at 323–24, 119 N.E.2d at 560–61. Juror 282's contacts and communications do not rise to this level of prejudice. The trial court in this case did not abuse its discretion in relying on the juror's assurances of impartiality because Juror 282's actions were not "prima facie prejudicial."

**Conclusion**

In cases of suspected jury taint, a presumption of prejudice still applies in limited circumstances. Whenever defendants can prove, by a preponderance of the evidence, that a juror engages in unauthorized contacts or communications that are directly related to their case, they are entitled to a presumption of prejudice. The State then bears the burden of showing harmless error. Ramirez has failed to demonstrate that he was entitled to a presumption of prejudice because he

10

has not shown that Juror 282's incident related to his case or even that the other jurors *believed* it was. Ramirez's case was instead one of simple juror misconduct, and he has not demonstrated that he suffered gross misconduct or probable harm. We affirm the trial court's denial of Ramirez's motion for a new trial, and summarily affirm the Court of Appeals' decision to uphold his sentence.

Dickson, C.J., and Rucker and David, JJ., concur.
Massa, J., concurs in result with separate opinion.

11

**Massa, J., concurring in result.**

I agree with my colleagues that the trial court properly denied Ramirez's motion for a mistrial and appropriately sentenced him to an aggregate term of sixty-two years' imprisonment for murder and criminal gang activity. I write separately because I would decide this case more narrowly and more simply.

The majority, faced with a plethora of somewhat muddled precedent from both federal and state courts, attempts to create order by carving out a new analytical framework and questioning one of our own prior decisions: Griffin v. State, 754 N.E.2d 899 (Ind. 2001). I prefer a gentler approach. After considering the three seminal federal decisions on this issue, I believe they are fully consistent with each other. What is more, I believe we can synthesize them and articulate a reasonable rule without doing violence to our precedent.

### A. Thesis: **Remmer v. United States**

In 1954, our federal Supreme Court considered a case in which a juror received an offer of bribery in exchange for a guilty verdict, and said:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

Remmer v. United States, 347 U.S. 227, 229 (1954) (citing Mattox v. United States, 146 U.S. 140, 148–50 (1892); Wheaton v. United States, 133 F.2d 522, 527 (8th Cir. 1943)). We articulated this same standard three decades later: "While a rebuttable presumption of prejudice arises from juror misconduct involving out-of-court communications with unauthorized persons, such misconduct

must be based on proof, by a preponderance of the evidence, that an extra-judicial contact or communication occurred, and that it pertained to a matter pending before the jury." Currin v. State, 497 N.E.2d 1045, 1046 (Ind. 1986) (internal citation omitted).

### B. Antithesis: Smith v. Phillips and United States v. Olano

Nearly thirty years after Remmer, the Supreme Court decided Smith v. Phillips, 455 U.S. 209 (1982). In Phillips, the defendant was convicted of murder and later learned that during his trial, one of the jurors had applied for a job in the district attorney's office. Id. at 212–13. The defendant moved to set the verdict aside, and after an evidentiary hearing, the trial judge concluded the application was an improper communication but did not have any bearing on the matter under consideration. Id. at 213–14. Thus, the judge denied the defendant's motion. Id. at 214.

The defendant sought federal habeas relief, and his case eventually reached the United States Supreme Court. Id. at 214–15. That Court found no due process violation, concluding the defendant was not entitled to a presumption of prejudice. Id. at 215. Justice O'Connor concurred but wrote separately to say that, as she read the majority opinion, Remmer was still good law:

> None of our previous cases preclude the use of the conclusive presumption of implied bias in appropriate circumstances. Remmer v. United States, 347 U.S. 227 (1954), on which the Court heavily relies, involved not juror misconduct, but the misconduct of a third party who attempted to bribe a juror. Under those circumstances, where the juror has not been accused of misconduct or has no actual stake in the outcome of the trial, and thus has no significant incentive to shield his biases, a postconviction hearing could adequately determine whether or not the juror was biased.

Id. at 223 (O'Connor, J., concurring). Thus, Justice O'Connor distinguished between cases in which a defendant is entitled to a presumption of prejudice—when a biased juror would have some motivation to conceal his bias, and thus a hearing would be fruitless—and cases in which he is entitled to an opportunity to show prejudice in a hearing—when a biased juror would have no motivation to conceal his bias, and thus a hearing would reveal it. Interestingly, under her analysis, Remmer was the latter. She gave examples of the former:

2

> While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

Id. at 222 (O'Connor, J., concurring). She concluded: "Because there may be circumstances in which a postconviction hearing will not be adequate to remedy a charge of juror bias, it is important for the Court to retain the doctrine of implied bias to preserve Sixth Amendment rights." Id. at 224 (O'Connor, J., concurring).

A decade later, Justice O'Connor got a chance to address these issues in a majority opinion. In United States v. Olano, 507 U.S. 725 (1993), the defendants appealed their convictions on the ground that two alternate jurors were present in the jury room during deliberations. Id. at 729–30. Although the Court ultimately concluded the jurors' presence was not a "plain error" and thus Federal Rule of Criminal Procedure 52(b) did not authorize the Court of Appeals to correct it, id. at 741, Justice O'Connor again made clear that the Remmer presumption survived: "There may be cases where an intrusion should be presumed prejudicial, but a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" Id. at 739 (internal citation omitted). Critically, she cited two examples of situations where the presumption should apply: Patton v. Yount, 467 U.S. 1025 (1984) and Turner v. Louisiana, 379 U.S. 466 (1965). Olano, 507 U.S. at 739. Both of those cases are instructive here—and neither involve situations in which a juror would have a motivation to shield his bias, so it follows that the presumption must apply beyond that narrow context.

In Yount, the defendant was charged with a brutal rape and murder; he pled not guilty by reason of temporary insanity and was convicted, but his conviction was reversed on appeal on the ground his confession was obtained in violation of his right to counsel. Yount, 467 U.S. at 1027. Before he was retried, the trial court suppressed his confession as well as his previous plea and conviction, but those matters had been the subject of extensive publicity during his first trial. Id. at 1027–28. After he was convicted a second time, he sought a new trial on the ground that the

3

prior publicity biased his second jury. Id. at 1028. The trial court denied his motion, and after losing his direct appeal, the defendant sought federal habeas relief. Id. at 1028. He was unsuccessful in the district court, but the Court of Appeals reversed, finding the publicity created such a strong presumption of prejudice that it was error for the trial court to believe the jurors' claims that they could be impartial. Id. at 1028–30. The Supreme Court—including Justice O'Connor—reversed the Court of Appeals, id. at 1031, reasoning that although "adverse pretrial publicity can create such a presumption of prejudice in a community that the jurors' claims that they can be impartial should not be believed," if the trial court nonetheless finds the jurors can be impartial, that finding can be reversed only for "manifest error," and no such error was present. Id. at 1031–32. The Court noted particularly that the long passage of time between the publicity of the first trial and the second trial "clearly rebut[ted] any presumption of partiality or prejudice." Id. at 1035.

In Turner, the defendant was charged with murder. Turner, 379 U.S. at 466. During his three-day trial, the jurors were sequestered and constantly accompanied by deputy sheriffs—two of whom were the chief witnesses for the State, testifying as to the defendant's apprehension, damaging statements, and written confession. Id. at 467–68. "The deputies drove the jurors to a restaurant for each meal, and to their lodgings each night. The deputies ate with them, conversed with them, and did errands for them." Id. at 468. After he was convicted and sentenced to death, the defendant appealed, arguing this arrangement rendered the jury biased in favor of the State and thus against him. Id. at 470. Although he lost in state court, the Supreme Court granted his petition for certiorari and reversed his conviction, id. at 470–71, finding "even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution." Id. at 473.

**C. Synthesis**

So what are we to make of all this?  The <u>Remmer</u> Court said the presumption of prejudice always applied, but the <u>Phillips</u> Court didn't apply it.  Justice O'Connor, concurring in <u>Phillips</u>, said the presumption should apply only when a juror has a motive to conceal his bias such that a hearing would not reveal it, which would have meant it didn't apply in <u>Remmer</u>, either.  But then in <u>Olano</u>, she—and the rest of the Court—agreed it should apply in cases like <u>Yount</u> and <u>Turner</u>, even though the jurors in those cases presumably had no motive to conceal any bias they might have had.  Indeed, as the saying goes, if you're not confused, you're not paying attention.

Our federal colleagues on the Seventh Circuit have considered this conundrum and said: "Taking <u>Phillips</u> and <u>Olano</u> together, two conclusions seem inescapable: (1) not all suggestions of potential intrusion upon a jury deserve a presumption of prejudice . . . but (2) there are at least some instances of intrusion upon a jury which call for a presumption of prejudice." <u>Hall v. Zenk</u>, 692 F.3d 793, 801 (7th Cir. 2012) <u>cert. denied sub nom. Butts v. Hall</u>, 133 S. Ct. 1805 (2013). Stated more specifically, when a defendant moves for a mistrial based on garden-variety juror misconduct, like a juror applying for a job in the prosecutor's office during the trial, <u>Phillips</u>, 455 U.S. at 212, or alternate jurors being present in the jury room during deliberations, <u>Olano</u>, 507 U.S. at 730, the burden is on him to show that the misconduct prejudiced his trial and he is therefore entitled to a new one.  But egregious misconduct or other circumstances that create a high probability of bias, such as when someone attempts to bribe a juror, <u>Remmer</u>, 347 U.S. at 228, when pervasive media coverage exposes the entire jury pool to excluded evidence, <u>Yount</u>, 467 U.S. at 1028, or when jurors are dependent upon State witnesses for the duration of the trial, <u>Turner</u>, 379 U.S. at 468, are prima facie prejudicial, and the burden rests upon the party not seeking the mistrial to rebut that presumption of prejudice.

This framework is fully consonant with our own precedent.  For example, the presumption of prejudice would apply in cases like <u>Kelley</u>, 555 N.E.2d 140 (Ind. 1990), where the unauthorized communication (half the jurors lunching with the State's sole witness and overheard making comments suggesting they were discussing the defendant's probable guilt) is clearly likely to affect

the verdict,[1] id. at 141–42, but not in cases like Griffin, where although an alternate juror improperly opined during deliberations that the defendant was guilty, "the alternate's only influence was adding one more 'me, too' to the collective voice of the jury majority" and thus not presumptively prejudicial. Griffin, 754 N.E.2d at 903.

In the particular case before us, one juror reported an alarming incident on the fifth day of trial: while the juror was away from home, a neighbor had called to say she had heard gunshots and running footsteps in the juror's apartment. The juror then told other jurors about the incident and was excused from the case after she told the judge she was afraid to continue serving. Defendant Ramirez moved for a mistrial, arguing the entire jury was tainted. But these facts simply do not rise to the level of egregious juror misconduct, and there is nothing about them that suggests a high probability the jury was tainted. The juror in question did not witness the incident herself, nor did she have any concrete reason to believe it was connected to her jury service. Therefore, it was appropriate for the trial court to require the defendant to show prejudice, and to deny his motion for mistrial when he could not do so.

Finally, the majority reads Kelley and Woods, as well as May v. State, 716 N.E.2d 419 (Ind. 1999) as applying an "irrebuttable presumption of prejudice." But none of those cases speak in such absolute terms. In May, we said: "Under certain circumstances, the extra-judicial juror conduct is so fundamentally harmful to the appearance of the fair and impartial administration of justice, it will be considered 'prima facie prejudicial' to the defendant, irrespective of whether the

---

[1] The Kelley Court found that case was "controlled by Woods," another case of circumstances that created a high probability of bias and were thus presumptively prejudicial. Kelley, 555 N.E.2d at 142. In Woods v. State, 233 Ind. 320, 119 N.E.2d 558 (1954), we reversed a defendant's conviction after police officers testifying on the State's behalf visited with jurors in the jury room during recess periods. Id. at 323–24, 119 N.E.2d at 560. That conduct, we held, was prima facie prejudicial to the defendant, even though there was no evidence the jurors and witnesses discussed the case. Id., 119 N.E.2d at 560–61. The Kelley Court also cited Turner. Kelley, 555 N.E.2d at 142.

communication concerned a matter pending before the jury." Id. at 422 (citing Woods, 233 Ind. at 324, 119 N.E.2d at 561; Kelley, 555 N.E.2d at 142). Thus, "prima facie prejudicial" simply means the juror misconduct alleged creates a high probability of bias and the defendant is therefore entitled to a presumption of prejudice—as in the federal cases Remmer, Yount, and Turner, and in our own cases Kelley, May, and Woods.[2] It may be, as the majority opinion posits, that there is a case in which an "irrebuttable presumption of prejudice" should apply—but it is not this case, nor is it any of the cases the majority cites. I would prefer to wait until that case comes before us, if it ever does, before we adopt a new doctrine.

*        *        *

State courts of last resort occupy a unique position in the jurisprudential hierarchy. We are accustomed to being final and thus necessarily infallible,[3] but when we address issues of federal constitutional dimension, we must suspend that custom. Just as our own state trial and intermediate appellate courts must study our opinions and try to apply the rules we articulate, we must study federal Supreme Court opinions, endeavor to distill from them a rule, and apply that rule to the case we are entrusted to decide. I am confident that if we are inadequate to the task, our federal colleagues will so advise us.

---

[2] Indeed, the Yount Court found the State successfully rebutted the presumption of prejudice in that case. Yount, 467 U.S. at 1027. And the Woods Court found the juror misconduct in that case was "prima facie prejudicial," Woods, 233 Ind. at 324, 119 N.E.2d at 561, but also seemed to imply that the State could have, theoretically, rebutted the resulting presumption of prejudice: "None of this testimony was contradicted, nor did the State introduce any evidence in rebuttal." Id. at 323, 119 N.E.2d at 560.

[3] "We are not final because we are infallible, but we are infallible only because we are final." Brown v. Allen, 344 U.S. 443, 540 (1953) (Jackson, J., concurring in result).

7