MASSA, J.,
concurring in result.
I agree with my colleagues that the trial court properly denied Ramirez’s motion for a mistrial and appropriately sentenced him to an aggregate term of sixty-two years’ imprisonment for murder and criminal gang activity. I write separately because I would decide this case more narrowly and more simply.
The majority, faced with a plethora of somewhat muddled precedent from both federal and state courts, attempts to create order by carving out a new analytical framework and questioning one of our own prior decisions: Griffin v. State, 754 N.E.2d 899 (Ind.2001). I prefer a gentler approach. After considering the three *942 seminal federal decisions on this issue, I believe they are fully consistent with each other. What is more, I believe we can synthesize them and articulate a reasonable rule without doing violence to our precedent.
A. Thesis: Remmer v. United States
In 1954, our federal Supreme Court considered a ease in which a juror received an offer of bribery in exchange for a guilty verdict, and said:
In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.
Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954) (citing Mattox v. United States, 146 U.S. 140, 148-50, 13 S.Ct. 50, 36 L.Ed. 917 (1892); Wheaton v. United States, 133 F.2d 522, 527 (8th Cir.1943)). We articulated this same standard three decades later: “While a rebuttable presumption of prejudice arises from juror misconduct involving out-of-court communications with unauthorized persons, such misconduct must be based on proof, by a preponderance of the evidence, that an extra-judicial contact or communication occurred, and that it pertained to a matter pending before the jury.” Currin v. State, 497 N.E.2d 1045, 1046 (Ind.1986) (internal citation omitted).
B. Antithesis: Smith v. Phillips and United States v. Olano
Nearly thirty years after Remmer, the Supreme Court decided Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In Phillips, the defendant was convicted of murder and later learned that during his trial, one of the jurors had applied for a job in the district attorney’s office. Id. at 212-13, 102 S.Ct. 940. The defendant moved to set the verdict aside, and after an evidentiary hearing, the trial judge concluded the application was an improper communication but did not have any bearing on the matter under consideration. Id. at 213-14, 102 S.Ct. 940. Thus, the judge denied the defendant’s motion. Id. at 214, 102 S.Ct. 940.
The defendant sought federal habeas relief, and his case eventually reached the United States Supreme Court. Id. at 214-15, 102 S.Ct. 940. That Court found no due process violation, concluding the defendant was not entitled to a presumption of prejudice. Id. at 215, 102 S.Ct. 940. Justice O’Connor concurred but wrote separately to say that, as she read the majority opinion, Remmer was still good law:
None of our previous cases preclude the use of the conclusive presumption of implied bias in appropriate circumstances. Remmer v. United States, 347 U.S. 227 [74 S.Ct. 450, 98 L.Ed. 654] (1954), on which the Court heavily relies, involved not juror misconduct, but the misconduct of a third party who attempted to bribe a juror. Under those circumstances, where the juror has not been accused of misconduct or has no actual stake in the outcome of the trial, and thus has no significant incentive to shield his biases, a postconviction hearing could adequately determine whether or not the juror was biased.
Id. at 223, 102 S.Ct. 940 (O’Connor, J., concurring). Thus, Justice O’Connor dis *943 tinguished between cases in which a defendant is entitled to a presumption of prejudice — when a biased juror would have some motivation to conceal his bias, and thus a hearing would be fruitless — and cases in which he is entitled to an opportunity to show prejudice in a hearing — when a biased juror would have no motivation to conceal his bias, and thus a hearing would reveal it. Interestingly, under her analysis, Remmer was the latter. She gave examples of the former:
While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.
Id. at 222, 102 S.Ct. 940 (O’Connor, J., concurring). She concluded: “Because there may be circumstances in which a postconviction hearing will not be adequate to remedy a charge of juror bias, it is important for the Court to retain the doctrine of implied bias to preserve Sixth Amendment rights.” Id. at 224, 102 S.Ct. 940 (O’Connor, J., concurring).
A decade later, Justice O’Connor got a chance to address these issues in a majority opinion. In United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the defendants appealed their convictions on the ground that two alternate jurors were present in the jury room during deliberations. Id. at 729-30, 113 S.Ct. 1770. Although the Court ultimately concluded the jurors’ presence was not a “plain error” and thus Federal Rule of Criminal Procedure 52(b) did not authorize the Court of Appeals to correct it, id. at 741, 113 S.Ct. 1770, Justice O’Connor again made clear that the Remmer presumption survived: “There may be cases where an intrusion should be presumed prejudicial, but a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury’s deliberations and thereby its verdict?” Id. at 739, 113 S.Ct. 1770 (internal citation omitted). Critically, she cited two examples of situations where the presumption should apply: Patton v. Yount, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) and Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). Olano, 507 U.S. at 739, 113 S.Ct. 1770. Both of those cases are instructive here — and neither involve situations in which a juror would have a motivation to shield his bias, so it follows that the presumption must apply beyond that narrow context.
In Yount, the defendant was charged with a brutal rape and murder; he pled not guilty by reason of temporary insanity and was convicted, but his conviction was reversed on appeal on the ground his confession was obtained in -violation of his right to counsel. Yount, 467 U.S. at 1027, 104 S.Ct. 2885. Before he was retried, the trial court suppressed his confession as well as his previous plea and conviction, but those matters had been the subject of extensive publicity during his first trial. Id at 1027-28, 104 S.Ct. 2885. After he was convicted a second time, he sought a new trial on the ground that the prior publicity biased his second jury. Id. at 1028, 104 S.Ct. 2885. The trial court denied his motion, and after losing his direct appeal, the defendant sought federal habe-as relief. Id. at 1028, 104 S.Ct. 2885. He was unsuccessful in the district court, but the Court of Appeals reversed, finding the publicity created such a strong presumption of prejudice that it was error for the trial court to believe the jurors’ claims that they could be impartial. Id. at 1028-30, *944 104 S.Ct. 2885. The Supreme Court— including Justice O’Connor — reversed the Court of Appeals, id. at 1031, 104 S.Ct. 2885, reasoning that although “adverse pretrial publicity can create such a presumption of prejudice in a community that the jurors’ claims that they can be impartial should not be believed,” if the trial court nonetheless finds the jurors can be impartial, that finding can be reversed only for “manifest error,” and no such error was present. Id. at 1031-32, 104 S.Ct. 2885. The Court noted particularly that the long passage of time between the publicity of the first trial and the second trial “clearly rebut[ted] any presumption of partiality or prejudice.” Id. at 1035, 104 S.Ct. 2885.
In Turner, the defendant was charged with murder. Tuner, 379 U.S. at 466, 85 S.Ct. 546. During his three-day trial, the jurors were sequestered and constantly accompanied by deputy sheriffs — two of whom were the chief witnesses for the State, testifying as to the defendant’s apprehension, damaging statements, and written confession. Id. at 467-68, 85 S.Ct. 546. “The deputies drove the jurors to a restaurant for each meal, and to their lodgings each night. The deputies ate with them, conversed with them, and did errands for them.” Id. at 468, 85 S.Ct. 546. After he was convicted and sentenced to death, the defendant appealed, arguing this arrangement rendered the jury biased in favor of the State and thus against him. Id. at 470, 85 S.Ct. 546. Although he lost in state court, the Supreme Court granted his petition for cer-tiorari and reversed his conviction, id. at 470-71, 85 S.Ct. 546, finding “even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution.” Id. at 473, 85 S.Ct. 546.
C. Synthesis
So what are we to make of all this? The Remmer Court said the presumption of prejudice always applied, but the Phillips Court didn’t apply it. Justice O’Connor, concurring in Phillips, said the presumption should apply only when a juror has a motive to conceal his bias such that a hearing would not reveal it, which would have meant it didn’t apply in Remmer, either. But then in Olano, she — and the rest of the Court — agreed it should apply in cases like Yount and Turner, even though the jurors in those cases presumably had no motive to conceal any bias they might have had. Indeed, as the saying goes, if you’re not confused, you’re not paying attention.
Our federal colleagues on the Seventh Circuit have considered this conundrum and said: “Taking Phillips and Olano together, two conclusions seem inescapable: (1) not all suggestions of potential intrusion upon a jury deserve a presumption of prejudice ... but (2) there are at least some instances of intrusion upon a jury which call for a presumption of prejudice.” Hall v. Zenk, 692 F.3d 793, 801 (7th Cir.2012) cert. denied sub nom. Butts v. Hall, — U.S. -, 133 S.Ct. 1805, 185 L.Ed.2d 811 (2013). Stated more specifically, when a defendant moves for a mistrial based on garden-variety juror misconduct, like a juror applying for a job in the prosecutor’s office during the trial, Phillips, 455 U.S. at 212, 102 S.Ct. 940, or alternate jurors being present in the jury room during deliberations, Olano, 507 U.S. at 730, 113 S.Ct. 1770, the burden is on him to show that the misconduct prejudiced his trial and he is therefore entitled to a new one. But egregious misconduct or other circumstances that create a high probability of *945 bias, such as when someone attempts to bribe a juror, Remmer, 347 U.S. at 228, 74 S.Ct. 450, when pervasive media coverage exposes the entire jury pool to excluded evidence, Yount, 467 U.S. at 1028, 104 S.Ct. 2885, or when jurors are dependent upon State witnesses for the duration of the trial, Turner, 379 U.S. at 468, 85 S.Ct. 546, are prima facie prejudicial, and the burden rests upon the party not seeking the mistrial to rebut that presumption of prejudice.
This framework is fully consonant with our own precedent. For example, the presumption of prejudice would apply in cases like Kelley, 555 N.E.2d 140 (Ind.1990), where the unauthorized communication (half the jurors lunching with the State’s sole witness and overheard making comments suggesting they were discussing the defendant’s probable guilt) is clearly likely to affect the verdict,[1] id. at 141-42, but not in cases like Griffin, where although an alternate juror improperly opined during deliberations that the defendant was guilty, “the alternate’s only influence was adding one more ‘me, too’ to the collective voice of the jury majority” and thus not presumptively prejudicial. Griffin, 754 N.E.2d at 903.
In the particular case before us, one juror reported an alarming incident on the fifth day of trial: while the juror was away from home, a neighbor had called to say she had heard gunshots and running footsteps in the juror’s apartment. The juror then told other jurors about the incident and was excused from the case after she told the judge she was afraid to continue serving. Defendant Ramirez moved for a mistrial, arguing the entire jury was tainted. But these facts simply do not rise to the level of egregious juror misconduct, and there is nothing about them that suggests a high probability the jury was tainted. The juror in question did not witness the incident herself, nor did she have any concrete reason to believe it was connected to her jury service. Therefore, it was appropriate for the trial court to require the defendant to show prejudice, and to deny his motion for mistrial when he could not do so.
Finally, the majority reads Kelley and Woods, as well as May v. State, 716 N.E.2d 419 (Ind.1999) as applying an “irre-buttable presumption of prejudice.” But none of those cases speak in such absolute terms. In May, we said: “Under certain circumstances, the extra-judicial juror conduct is so fundamentally harmful to the appearance of the fair and impartial administration of justice, it will be considered ‘prima facie prejudicial’ to the defendant, irrespective of whether the communication concerned a matter pending before the jury.” Id. at 422 (citing Woods, 233 Ind. at 324, 119 N.E.2d at 561; Kelley, 555 N.E.2d at 142). Thus, “prima facie prejudicial” simply means the juror misconduct alleged creates a high probability of bias and the defendant is therefore entitled to a presumption of prejudice — as in the federal eases Remmer, Yount, and Turner, and in our own cases Kelley, May, and Woods.[2] It may be, as the majority opinion posits, *946 that there is a case in which an “irrebutta-ble presumption of prejudice” should apply — but it is not this case, nor is it any of the cases the majority cites. I would prefer to wait until that case comes before us, if it ever does, before we adopt a new doctrine.
State courts of last resort occupy a unique position in the jurisprudential hierarchy. We are accustomed to being final and thus necessarily infallible,[3] but when we address issues of federal constitutional dimension, we must suspend that custom. Just as our own state trial and intermediate appellate courts must study our opinions and try to apply the rules we articulate, we must study federal Supreme Court opinions, endeavor to distill from them a rule, and apply that rule to the case we are entrusted to decide. I am confident that if we are inadequate to the task, our federal colleagues will so advise us.

. The Kelley Court found that case was "controlled by Woods." another case of circumstances that created a high probability of bias and were thus presumptively prejudicial. Kelley, 555 N.E.2d at 142. In Woods v. State, 233 Ind. 320, 119 N.E.2d 558 (1954), we reversed a defendant’s conviction after police officers testifying on the State's behalf visited with jurors in the jury room during recess periods. Id. at 323-24, 119 N.E.2d at 560. That conduct, we held, was prima facie prejudicial to the defendant, even though there was no evidence the jurors and witnesses discussed the case. Id. at 322-25, 119 N.E.2d at 560-61. The Kelley Court also cited Turner. Kelley, 555 N.E.2d at 142.

. Indeed, the Yount Court found the State successfully rebutted the presumption of prejudice in that case. Yount, 467 U.S. at 1027, *946 104 S.Ct. 2885. And the Woods Court found the juror misconduct in that case was "prima facie prejudicial,” Woods, 233 Ind. at 324, 119 N.E.2d at 561, but also seemed to imply that the State could have, theoretically, rebutted the resulting presumption of prejudice: "None of this testimony was contradicted, nor did the State introduce any evidence in rebuttal.” Id. at 323, 119 N.E.2d at 560.

. "We are not final because we are infallible, but we are infallible only because we are final.” Brown v. Allen, 344 U.S. 443, 540, 73 S.Ct. 397, 97 L.Ed. 469 (1953). (Jackson, J„ concurring in result).